Kennedy, J.
The admission of the evidence complained of in the first error assigned, was certainly right. The circumstance of another action pending between the parties for the same cause, was not a sufficient objection to it. If two actions be brought for the same cause at the same time by the plaintiff against the defendant, he may plead the one in abatement of the other, and by this means abate them both. Pie v. Cook, (Hob. 128. S. C. Moore, 864, pl. 1193.) 1 Roll, Abr. 353. 39 H. 6, 13. pl. 16 per Prisot, Justice, cited 5 Mass. 179, in note. Mayor, &c. v. B. (1 Freem. 401. pl. 526. S. C. 3 Keb. 491.) 3 Burr. 1434. Com. Dig. Tit. Abatement, Ib. 24. Beach v. Norton, (8 Conn. 71.) But if one action be commenced before the other, the defendant may abate the second by pleading the pendency of the first; and unless he plead it in abatement, he cannot take advantage of it, because it forms no bar to the plaintiff’s *313 right of action, and therefore cannot be given in evidence under the general issue, or any other plea in bar. Beyond, however, the vexation of having two suits on hand, to attend to at the same time, the defendant cannot be prejudiced; because after atrial and judgment rendered in one of the actions, no matter if it be the first or the second, in respect to the time of its commencement, he may plead such judgment puis darrein continuance, in bar of the other, and thus protect himself against all liability in it. Garvin v. Dawson, (13 Serg, & R. 146.) The taking and carrying away the willows were charged in the plaintiff’s declaration as part of his complaint; and after evidence given on the trial tending to prove the fact, the evidence objected to, was certainly material to the issue, and therefore properly admitted.
The second error is not sustained either: because even admitting that the Court were wrong in refusing to permit the receipt to be read in evidence, still they may be • considered as having corrected their error afterwards, by admitting it. The counsel for the plaintiffs in error, however, allege, that their clients were prejudiced, notwithstanding the subsequent admission of the receipt in evidence: because in consequence of the Court’s refusing to permit the receipt to go in evidence to the jury when first offered, they say, that they were compelled to adduce John Lentz, jr. as their witness, who was unfavourably disposed towards them, and in his testimony gave a colouring to the case, in some respects, that was untrue and calculated to prejudice the jury against them: also, that the plaintiff below, who, as they believe, intended to adduce Lentz as a witness on his behalf, by this gained an advantage that he could not have had in case he had called him first, by drawing from him all the testimony he wished, in answers to hading questions. It may be that it was no disadvantage to the plaintiff below, that the plaintiffs in error called John Lentz, jr. as their witness, but still it cannot be said with propriety, that the Court below compelled them to do so. If they were convinced that the Court was wrong in refusing to permit the receipt to be read in evidence when first offered, they ought, after taking their bill of exceptions to the opinion of the Court in this behalf, to have passed Lentz by, and to have proceeded with their other evidence; and if they lost the cause, then to have brought their writ of error. It will not do then, to say that they were forced by the decision of the Court, to call Lentz as their witness, because it was clearly at their option to do so or not as they pleased.
But seeing that there was no evidence given, when the receipt was first offered, tending to show that it was given, or had an existence before the trespass was alleged to have been committed, I am inclined to think that the Court was right in rejecting it; for to have admitted it to be read in evidence to the jury upon proof merely that John Lentz junior’s name, which was subscribed to it, was in his handwriting, would have been a pretty dangerous kind *314 of testimony, especially as Lentz himself was still in being and present, who at least could be called to testify, how the fact was; whether it was given at the time of its date, and whether the facts contained in it were true or not. For any thing that appeared to the Court, when it was first offered, it might have been manufactured within the last hour immediately preceding, between Krider and Lentz, for the very purpose of being offered in evidence, without there being a word of truth in any thing set forth in it: this being the case, it appears to me that it was properly rejected when first offered.
We also think there is nothing in the third error assigned. As Lafferty, the plaintiff- below, was no party to the receipt, he was not estopped from gainsaying the truth of the matters alleged in it. It was competent therefore for him to show, if he could, that it was all a fiction, or a contrivance between Krider and Lentz, made for the purpose of defrauding him of his just rights: and this he was at liberty to show by the evidence of Lentz himself, as well as that of any other; for Lentz, not being a party to the suit, could be coerced at the instance of either party, to testify to any thing within his knowledge that was material to the issue. If the receipt was a misrepresentation of the matters set forth in it, no one could know it better than Lentz; and therefore as regarded knowledge on the subject, no body could be better qualified to testify: And even if it had been concocted for a fraudulent purpose, he would have been bound to have disclosed it, provided it were material to the issue: His being a party to the fraud, would not have excused him from giving evidence of it, as long as it were of such a nature as would not subject him to criminal punishment.
The authorities cited by the counsel for the plaintiffs in error, showing that written agreements or instruments cannot be altered, changed or contradicted, have not the least application: the rule laid down by them is only applicable to cases of controversies between the parties to the agreements, their representatives, and those claiming under them, but not to strangers; whose rights and interests would truly be in peril if the rule were to be extended to them, in such manner as to conclude them from giving evidence tending to contradict such agreements.
The fourth error embraces the answers of the Court to six points submitted on the trial by the counsel for the plaintiffs in error; in each of which they allege the Court erred. • • •
The first is, as to the effect of the deed given in evidence by the plaintiff, as evidence of his title to the locus in quo. The counsel of the plaintiffs in error, requested the Court to instruct the jury that it conveyed a fee simple to the defendant in error; but the Court entertaining a different opinion, told the jury that it did not pass a fee. In this I think the Court was mistaken; for the deed in express terms passes the land to Lafferty, his legal heirs and representatives, re *315 serving a rent of fifteen dollars to be paid by the said LafFerty or Ms legal heirs, annually, to the said John Lentz, his heirs and assigns. The Court seems to have overlooked the words of inheritance in the deed, which certainly set forth the quantum, of estate intended to be conveyed; and to have taken up the idea that as the word “ let” is the only term used by the grantor in the deed, to part with his interest in the land, it was not sufficient to pass a fee simple, though words of inheritance were used in connection with it. Now it is well settled) that the construction of a deed must be as favourable and as near to the minds and apparent intent of the parties as it is possible it may be, and the law will permit: for benigne sunt fadeuda interprelationes chartarum, propter simplidtatem laicorum. Et verba intentioni, non e contra, debent inservire. Shep. Touch. 86, Co. Litt. 314, (b). The words in a deed are not the principal thing to be attended to, but the design and intention of the parties. 3 Atk. 135. Plowd. 160. And accordingly, if the intent of the parties appears, the law will construe the words in such sense as to perform that intent, rather than in any other sense. Plowd. 154. The Court below, seems to have thought that a conveyance of land in which the word “let,” alone, was used, to pass the interest intended to be conveyed, must necessarily be what is strictly and technically called a lease; which Sir Wm. Blackstone says must always be for a less time than the lessor hath in the premises. 2 Bl. Com. 317. And therefore something less than the fee simple, which was the most the grantor could have in the premises, passed by it. The usual words of operation, and as it is said, most apt in a lease, are “ demise, grant and to farm let.” Shep. Touch. 266. Co. Lit. 456. 2 Bl. Com. 317, 18: and the latin words, when leases were drawn in that language, were “ dimisi, concessi, et adfirmam tradidi.” 2 Bl. Com. 317, 18. The word “ let,” may therefore be considered a translation of “tradidi,” which is from trado, signifying, “ to deliver, give, or yield, to deliver up, to surrender, to resign, to put into one’s hands,” áse., and would seem to be quite as appropriate to show that it was the intention of the vendor or grantor, to part with and transfer a fee simple estate to the vendee or grantee, when accompanied with a limitation to the heirs generally of the latter, as the words, “ do” or “ dedi,” which are considered to be the most apt to be used in a deed of feoffment in fee, (2 Bl. Com. 310,) the most efficacious mode in some respects, of conveying land, known to the law. Shep. Touch. 204. Co. Lit. 9, a. 49, b. But it is certainly a great mistake to suppose that the words considered most apt for any particular species of conveyance, or indeed, that any of then), are at all necessary to the making thereof; for Lord Coke says, “whatever w’ord amounteth to a grant, may serve to make a lease.” Co. Lit. 45, b. The word “demise,” he also says, “is applied to an estate either in fee simple, fee tail, or for term of life, and so commonly is taken in many writs.” 2 Inst. 483. So the words “ bargain and sell/’ are *316 not necessary to constitute a deed of bargain and sale, in order to pass a fee simple or less estate in land, under the statutes of uses and the statute of 27 Hen. 8. c. 16, requiring such deed to be enrolled within six months after its date, if the estate conveyed be a freehold ; other equivalent words will be sufficient to make land pass by way of bargain and sale; such as the words “ alien or grant,” “ demise and grant,” or if the owner of land “covenant to stand seized of his land to the use of another;” these will all amount to good bargains and sales, if made for a pecuniary consideration or one of pecuniary value, though ever so small, even a barleycorn. Shep. Touch. 222. 2 Inst. 672. Fox’s Case, (8 Co. 186.) Barker v. Keat, (1 Mod. 262, and 2 Mod. 249.) It is perfectly clear then, from the authorities oil this subject, as well as from the very structure of a deed conveying land, when the words “ enfeoff, give, grant, alien, bargain, sell, demise, let,” &c. or any of them are used, that it is not to express or to designate in the slightest degree, the quantity of estate intended to be conveyed, but merely for the purpose of passing from the seller to the purchaser, the estate therein described, by other words introduced specially for that end, giving to it, either the character of a fee simple, fee tail, term for life or lives, or for years: as for instance, if it be a fee simple that is intended to be transferred, the words “ his heirs,” must be inserted immediately after the name of the purchaser, for they and they alone, are sufficient to make it such according to Littleton, sec. 1. The word “ let,” in the deed in question, according to the rules of construction already mentioned, must also be considered sufficiently operative to pass the fee simple in the land, if from the whole tenor of the deed itself, it appears to have been the intention of the parties to use it for that purpose. That John Lentz intended to convey by this deed, some estate in the land to Daniel Lafferty cannot be doubted; and that the word “ let,” was used for the purpose of passing that estate or interest, whatever it was, admits of as little doubt, because it is the only word used to which any meaning of the kind can or ever has been affixed; and if the other words of the deed are to be regarded as they must, for in construing deeds or instruments of writing, effect must be given to every word used therein, if it can be done consistently with the other parts thereof; it is evident that the interest and estate, thereby conveyed, were not only intended to be enjoyed by Daniel Lafferty himself, but also by his heirs generally,.without any restriction or limitation whatever; which cannot be without giving to Lafferty a fee simple estate in the land,subject however to a fee-farm-rent, as it is termed by Littleton, sec. 216 and 217; or a perpetual rent, as it is called by Mr. Hargrave, in his note 5 to Co. Lit. 143, 4; and with us usually called a ground rent in fee. And indeed it appears to me that the deed in this case, as a conveyance of the land in fee, is about as perfect as the form that was adopted and prescribed by an act of *317 the Assembly of the Province of Pennsylvania, two or three years after it was granted to William Penn, passed the IOth of March, 1683, which is in these words, to wit: “ A. B. of, &c. the day of from him and his heirs, grants his acre of meadow land, with all its appurtenances lying in, &c. toC. D. and his heirs, for the consideration of fifteen dollars yearly rent, to be paid to A. B. and his heirs and assigns, upon the day of In witness whereof, he sets his hand and seal.” See Hall and Sellers’ vol. of the Province L. appendix, 9. The word “ grant,” is used in the form thus prescribed, instead of the word “ let,” which at most is but a verbal difference, and cannot change the character of the deed as a conveyance of the land, or its effect..
The counsel for the plaintiff in error'also, in reference to this deed, requested the Court to instruct the jury, that if it were not a conveyance of the fee simple, but a mere lease of the land, it was void for uncertainty, on account of the time of its duration not being mentioned. The Court, however, declined giving such instruction to the jury; and on the contrary advised them, that taking the deed in connexion with the conduct of the parties, of which they had parol evidence given to them, they might consider it a lease from year to year: this is also complained of by the plaintiffs in error, as being incorrect; ' and no doubt it is so, as has already been shown in the opinion advanced, that a fee simple passed by the deed. If, however, the counsel had asked the Court to instruct the jury, that the deed was void for uncertainty, in not describing the land intended to be conveyed, so as to enable its precise location to be ascertained, there would have been more colour for it at least. But still I do not think that they would have been available: for notwithstanding this uncertainty, yet it was capable of being rendered certain by the subsequent act of the parties, if not by the act of the vendor alone. For instance, if one grant me three acres of wood toward the north side of his wood, this is a good grant and certain enough. Shep. Touch. Tit. Grant, page 250. So if one be seized of two acres of land, and he doth lease them for life, and grant the remainder of one of them, but doth not say which, to J. S.; in this case if J. S. makes his election, as to which he will have, the grant of the remainder to him will be good: or if a man having six horses in his stable, grants me one of them, without saying which, I may choose which I will have; and having made my election, and not before, the grant is good. See Shep. Touch. Tit. Grant, page 251. Perkins, sec. 74, 76. According to the principles of these authorities, the location of the land granted by the deed, was reduced to certainty afterwards, by the act of the parties in setting it offby metes and boundaries, and by the act of the grantee in taking possession of it in the lifetime of the grantor, by and with his consent.
But, still, notwithstanding the Court erred in their instruction to the jury as to the nature and effect of the deed, it becomes neces *318 sary to inquire, whether any injury could arise therefrom to the plaintiffs in error, for unless they may have been prejudiced by it, with the jury; it is not sufficient cause for reversing the judgment. The effect of the charge of the Court was to induce the jury to consider Lafferty as a tenant of the land only from year to year, in place of being, a tenant thereof in fee simple. Now I am utterly unable to perceive any benefit that the plaintiffs in error could have derived from a direction of the Court to the jury, that the deed passed a fee simple estate in the land to Lafferty, that they were not entitled to claim, in the case of its creating only a tenancy from year to year.
Admitting the distinction taken by the counsel for the plaintiffs in error, between a tenant in fee and a tenant from year to year, to exist in favour of a bona fide purchaser for a valuable consideration, still with what propriety could the counsel ask the Court to assume the fact, contrary as I conceive, to the testimony of the witnesses on both sides, that Krider was such a purchaser; and to instruct the jury that the title of Lafferty must, therefore, give way to him. This, had the Court done so, would not only in effect have been a withdrawal of the decision of a matter of fact from the jury, but would have been a decision of it by the Court, contrary to a body of evidence, which went to prove very clearly, that the fact was otherwise. Though Lafferty had never put his deed on record, yet it appears from the testimony of the witnesses of both parties, that he had been in the actual possession and enjoyment of the acre of land from the year 1816 to the time of the trial, and of course was in the actual possession thereof, at the time Krider became the purchaser. When Lafferty bought, it was meadow, and part of a larger tract of land, owned by John Lentz at the time. Lafferty, it seems, was a basket-maker; and immediately after his purchase, the ground being set apart from that owned by Lentz, he took possession of it, planted it with willows, for the purpose of supplying himself with materials to carry on the business of his trade, and continued to occupy it, growing willows upon it, and cutting them every year at the proper season. This visible change in the appearance and occupation of the ground could not wrell fail to attract the notice of the neighbourhood; and hence it would seem, that all the witnesses who had resided within the same, for any length of time, had become acquainted with Lafferty’s occupation of the ground. His possession then being sufficiently distinct to be notorious, was sufficient to put Krider upon his inquiry, as to the right, under which Lafferty held the possession of the land; and being sufficient for that purpose was good notice in equity. Smith v. Lowe, 1 Atk. 490. Sug. Vend. 743. This case, as presented by the evidence, is not like the case of Billington v. Welsh, (5 Binn. 129,) to which it has been compared by the counsel for the plaintiffs in error. Welsh had never had the fifty acres of land, which he alleged he bought of *319 Turner, laid off by survey or separated in any way from the residue of Turner’s land. Turner had erected iron-works on his part of the land, and various dwelling-houses and other buildings for the accommodation of the persons in his employ, and for carrying on his business; with which the buildings and improvements of Welsh, to the eye of the spectator, were apparently connected, and seemingly formed a part thereof; so that there was no distinct unequivocal possession of the land by Welsh, as there has been here by Lafferty. Under such circumstances it is obvious, that it would have been erroneous on the part of the Court, and have been doing great injustice to Lafferty, to instruct the jury as requested by the counsel for the plaintiffs in error. They might have made a question as to what would amount to notice to Krider, of the right of Lafferty to the land; and whether such facts and circumstances had been proved as were equivalent to it; but it would seem as if they were unwilling to encounter it; and wished to have it assumed as being in favour of their clients. The charge of the Court then, in regard to the nature and effect of the deed, though erroneous, yet being more favourable to the plaintiffs in error, as we conceive, than their counsel had any right to claim, does not furnish a sufficient ground for reversing, the judgment.
As Lafferty acquired a fee simple estate in the acre of land, on which the trespass is alleged to have been committed, by the deed from Lentz to him, the questions embraced in the 3d and 4th points submitted by the counsel for the plaintiffs in error, to the Court below, were not material to the issue, and, therefore, require no further notice.
In regard to the 5th point: we think there was no ground whatever for asking the Court to instruct the jury, as was done by it, that in case they found for the plaintiff below, the damages ought to be merely nominal; as the trespass committed, if any, was unintentional. Krider, one of the plaintiffs in error, under whose authority the others acted, being notified expressly by Lafferty of his right to the land and the willows, persisted in going on with the trespass and taking the willows away, after they were cut, in place of tendering amends for the injury done. It was certainly not an unintentional trespass, but one of design, committed under colour of right, which has been attempted to be vindicated throughout: Lafferty, beside the loss of his property, must have been put to considerable expense in asserting and establishing his right: and I am, therefore, not satisfied, but it was a proper case enough, to be left by the Court to the jury, to decide whether damages beyond the value of the willows taken, and the injury done, if any, to the freehold, ought not to be given : nominal damages, merely, were out of the question; for it would have been error, as it appears to me, in the Court, to have suggested less than compensatory.
In regard to the sixth point; Lafferty being held to be the owner *320 of the land, on which the willows grew and were cut; and being in the actual possession of it, there can be no question, but he had a right to allege in his declaration, in addition to the breaking and entering of his close, the cutting, taking and carrying away of the willows there found growing; and having alleged it, it was competent for him to prove it, if he could; and if he proved it, he was entitled to recover damages, equal to the full value of the willows at least, as well as for the injury done to the freehold; hence the Court committed no error in their answer to this point, that could injure the plaintiffs in error.
The judgment is affirmed.