## Hoffman *against* Strohecker.

No title passes to a vendee who is guilty of actual fraud in procuring it, whether the sale be private or judicial. He who purchases at sheriff's sale, knowing at the time that the judgment on which the sale is made was satisfied, acquires no title; and a purchaser from him stands in no better situation, unless he be a purchaser for a valuable consideration, without notice of the fraud.

Courts are anxious to protect titles which depend upon the record; it is the muniment of title on which purchasers depend, and they are not bound to look beyond it to discover latent frauds of which they have no notice, and to which there is nothing to direct their attention.

ERROR to the common pleas of *Berks* county.

Jacob Hoffman against Peter Strohecker. This was an action of ejectment for fifty-one acres of land, in which each party claimed under the same original title, admitted to have been in John Garber.

After the death of John Garber intestate, upon the petition of John Garber, his eldest son and heir at law, there was a proceeding in partition, by which the land in dispute was vested in the said John

[Hoffman v. Strohecker.]

Garber the son, on the 6th August 1819, he having entered into recognizances for the payment of the shares of the other heirs. On the 10th of July 1835, a judgment was obtained against John Garber the son, upon which execution issued, was levied upon the land in dispute, and on the 9th November 1835, the same was sold to Jacob Hoffman, the plaintiff.

The defendant, to maintain the issue on his part, gave in evidence the record of an action by John S. Hiester, against David Garber and John Garber, administrators of John Garber deceased, to August term 1822 ; debt on bond in the penalty of 4500 dollars, conditioned for the payment of 2250 dollars.

This suit was brought on the 11th of July 1822, and the following statement filed on the paper containing the *præcipe*. "The above suit is founded on a joint and several bond executed by John Garber deceased, and John Strohecker, dated the 25th day of September, A. D. 1817, for 4500 dollars ; penalty conditioned for the payment of 2250 dollars on the 25th day of September next, with lawful interest."

On the 11th November 1822, judgment by default was rendered for the plaintiff, upon which a *fieri facias* was issued to January term 1823, which was levied upon two tracts of land, one of which was the land in dispute, which were condemned. A *venditioni exponas* issued to April term 1823, which was returned, "sold one tract of land to Joseph Hoch for 6910 dollars ; and the land in dispute to Nicholas Slidel for 5015 dollars." Upon the return of the writ a motion was made to show cause why the sale to Slidel should not be set aside. On the 9th of April 1823, the deed to Hoch was acknowledged ; and on the 12th of April 1823, the sale to Slidel was set aside, and the levy and inquisition on the land in dispute were set aside, and an *alias fieri facias* was awarded by the court for the residue of the debt, interest, and costs, returnable to August term 1823, upon which the same tract of land was levied on and condemned: the *præcipe* for this *alias fieri facias* was dated 3d June 1823." A *venditioni exponas* was issued to November term 1823, which was returned "sold to John Strohecker for 5500 dollars." A sheriff's deed was made to him, dated 21st October 1823, and acknowledged 14th November 1827.

On the 14th April 1823, John S. Hiester received from the sheriff 2392 dollars 17 cents, in full of the debt and interest on his judgment. The sheriff proved that this payment was made out of the money arising from the sale of the land to Hoch.

Mr Hiester has been examined, and he testified, that he did not apply for the order that an *alias fieri facias* should issue. He also testified that sheriff Betz, and either David or John Garber called on him, to give the *præcipe* for the *fieri facias*. That he refused, inasmuch as his debt had been paid. That they then told him, that there were other debts, and their object was to save time and costs. That he then signed the *præcipe*, and afterwards, he also signed the

[Hoffman v. Strohecker.]

*præcipe* for the *venditioni*, on these representations, for the same purpose.

It was shown that this debt to Hiester was for money lent by him to John Garber deceased, and John Strohecker, as joint debtors. That Hiester had a judgment for this same debt, also against John Strohecker, dated the 11th July 1822. That satisfaction was entered upon this judgment in full, on the 14th April 1823, the same day on which Hiester received his money from the sheriff.

It was also shown, upon the trial, that the specialty debts against the estate of John Garber deceased, amounted to 5568 dollars 70 cents, including Hiester's debt, so that the sale actually made was more than sufficient to pay Hiester's judgment, before the *alias fieri facias* issued. The court below charged the jury, that although the judgment was actually satisfied before the *alias fieri facias* issued, yet the award of the execution by the court was sufficient upon which to make a valid sale of the land, as to the present defendant, if he was a *bona fide* purchaser from John Strohecker for a valuable consideration, without notice that the debt was paid; of which facts the jury were to judge. Verdict for defendant.

*Hoffman* and *Greenough*, for plaintiff in error, cited, 4 *Mass. Rep.* 402; 12 *Serg. & Rawle* 41; 1 *Penns. Rep.* 278; 4 *Cow. Rep.* 417; 4 *Johns. Chan.* 255; 7 *Cow. Rep.* 1; 6 *Watts* 96; 5 *Binn. Rep.* 266; 3 *Rawle* 273; 7 *Serg. & Rawle* 97; 1 *Cow. Rep.* 622; 4 *Watts* 359; 9 *Serg. & Rawle* 9; 2 *Watts* 359.

*Smith*, for defendant in error, cited, 3 *Wend.* 331; 17 *Serg. & Rawle* 279; 2 *Penns. Rep.* 82; 7 *Serg. & Rawle* 467; 1 *Rawle* 223; 2 *Watts* 142; 1 *Bald. Rep.* 246; 2 *Peters* 157; 16 *Serg. & Rawle* 38.

The opinion of the Court was delivered by

ROGERS, J.—This case was put entirely on the special award of the *fieri facias*. The court charged the jury that the award of the *alias fieri facias* legalizes it, and that for that reason it will support the sheriff's sale in the lands of the defendant, who purchased on the faith of the order. It is unnecessary to decide on the propriety of the abstract proposition, as to the person who procured the award, and was perfectly aware of all the facts, as this case does not call for the decision of the point. The 7th April 1823, the court granted a rule to show cause why a former sale, made on Hiester's judgment, should not be set aside. This rule, on the 12th April 1823, was made absolute; the levy and inquisition set aside; and an *alias fieri facias* was awarded for the residue of the debt, interest and costs. It is impossible now to ascertain the ground on which this writ was awarded, notwithstanding there was money in court amply sufficient to pay the amount of the judgment. We are however, bound to suppose that every thing was rightly done, unless there is proof of unfair dealing on the part of those interested in the estate, or who undertook the management of it. At the time the court made the order, the money was

[Hoffman v. Strohecker.]

not in fact paid to Hiester, although there was some reason to say it was paid by operation of law. But whether Hiester would be entitled to the whole amount of his debt, out of the proceeds of sale, would depend upon circumstances; as for instance, whether the money raised was sufficient, not only to pay the amount of the judgment, but also debts against the intestate of equal grade. It must be remembered, that Hiester's judgment was had after Garber's death, and, of course, he would be entitled to no more than a rateable share of the proceeds of sale. For this reason, the court admitted testimony to show that there were other bond debts which were entitled to a share of the proceeds. The plaintiff was not injured by the testimony, although it is difficult to see upon what ground debts of an inferior degree were admitted. But these points are immaterial, as we understand the testimony; for, two days after the decree of the court, on the 14th April, the sheriff, who in the mean time had received the money arising from the sale, paid to Hiester the whole amount of his judgment, and on the same day, satisfaction was entered on the judgment against John Strohecker, who was the co-obligor on the bond on which the judgments against Strohecker and Garber's estate were had. Hiester, who was properly admitted as a witness, testifies that after the money had been paid to him, the sheriff and one of the Garbers called on him to issue another execution. After some objection, he was prevailed on to give a *præcipe* for an *alias fieri facias,* which was issued in pursuance thereof, to August term 1823. From the testimony of Hiester, it appears that the money was paid, after the award of the court; and satisfaction was entered on the judgment against Strohecker before the *alias fieri facias* was issued, on a *præcipe* given for it. Did then, the purchaser, John Strohecker, acquire title under the sheriff's sale? And on this point we cannot permit ourselves to doubt. When a vendee is guilty of actual fraud in procuring a title to land, no title passes to him, whether the sale be private or judicial. So when one enables himself to become a purchaser by the commission of a fraud, no title is vested in him by the sheriff's deed. Gilbert *v.* Hoffman, 2 *Watts* 66 ; M'Kennan *v.* Pry, 6 *Watts* 137. A justice who issues a second execution, after the first is satisfied, is a trespasser. Lewis *v.* Palmer, 6 *Wend.* 367. A sale of the property of the defendant, by virtue of a judgment and execution which is satisfied, the purchaser having full knowledge of the fact, would, it seems, be a nullity, although the defendant assented to the proceeding. Jackson *v.* Anderson, 4 *Wend.* 475. And in Swan *v.* Saddleman and Wood, 8 *Wend.* 677, it is ruled that an execution upon a judgment, which has been paid and satisfied, is absolutely void, and not merely voidable, and a purchaser under such execution acquires no title. If it is intended to say that a purchaser, without notice, acquires no title, I should adopt the principle with great hesitation, and should be much inclined to doubt the policy of establishing such a rule. It would not be for the plaintiff and defendant, under such circum-

[Hoffman v. Strohecker.]

stances, to complain, as the injury would result from their own fraud, or negligence, in not causing satisfaction to be entered on the judgment. It would be imposing upon a purchaser at sheriff's sale the necessity of ascertaining whether the debt had been paid. He has a right to purchase on the faith of the records of the court, which import verity.

If the defendant is not a purchaser for a valuable consideration, he would be in no better situation than his father, under whose grant he holds. But if he was a purchaser for a valuable consideration, which has been paid without notice that the debt was paid, the law would protect him as an innocent purchaser. And so the court instructed the jury, and further, as we think, correctly, that the record did not furnish such a state of facts, as would affect him with notice. Although a sale of land by an executor in pursuance of powers contained in a will, may be fraudulent and void as respects the purchaser, because of his having been a party to the fraud, yet, as respects a subsequent and innocent purchaser from him, the title is good. Price *v.* Junkin, 4 *Watts* 85. And in Fillerman *v.* Murphy, 4 *Watts* 424, it was held, that where there was a sheriff's sale of an intestate's land, upon a judgment fraudulently obtained, to the attorney who obtained it, it is void as to the owners; but if it has been subsequently conveyed to an innocent purchaser, he is not affected by the fraud, and will have a good title. We have always been anxious to protect titles which depend upon the record. They are the muniments of titles on which purchasers depend, and they are not bound to look beyond them to discover any latent frauds, of which they have no notice, and to which there is nothing to direct their attention. They can only be affected by notice, either actual or legal. There is nothing on this record which would lead the purchaser, the defendant, to a knowledge of the transaction, for it does not appear on the record that there was any connection between the judgment obtained against the administrator of Garber and John Strohecker. That the purchaser at the sheriff's sale had notice, both actual and legal, does not admit of doubt; but that the defendant had, depends on all the circumstances of the case, of which the jury must judge. But was the defendant a *bona fide* purchaser? If he had notice of the fraud, he was not, nor is he protected if the purchase money be unpaid. In the Union Canal Company *v.* Young and others, it was held, that purchasers without notice are not entitled to protection, further than as they have actually paid the purchase money. No gift nor family arrangement will entitle the defendant to hold the property against the claim of the plaintiff. For unless the claimants in interest agreed to the sale, with a knowledge of all the facts, the agreement of the other heirs cannot affect the question. The recognizance of Susan Dean was a lien on John Garber's land, and this lien cannot be disturbed by any arrangements which he and the other heirs may think proper to make.

Judgment reversed, and a *venire de novo* awarded.