## M'Culloch *against* Cowher.

5ws 127<br>193 650

If a plaintiff in ejectment, after action brought, part with his title, the vendee cannot be substituted, so as to enable him to recover in that action.

A plaintiff in ejectment, who had no title at the commencement of the action, .cannot recover, although he acquired title before the trial.

A plaintiff in ejectment, who parts with his title after the commencement of the action to his co-plaintiff, is not entitled to recover a verdict for the land for the use of the vendee, nor can such co-plaintiff recover on the title thus conveyed to him.

An agreement to withhold his competition in the purchase of land by one who is in possession without title, is a good consideration for a promise to convey to him a part of the land by one who purchased from the real owner.

The possession of land is notice of every title under which the occupant claims it, unless he has put on record a title inconsistent with his possession.

Where a parol contract for the purchase of land has been carried on *malâ fide*, there is a resulting trust implied by law, and equity will decree a conveyance according to the terms of the contract.

ERROR to the Common Pleas of *Centre* county.

This was an ejectment for a tract of land, brought by George M'Culloch, William Mitchell, James Dickson and Thomas M'Namara against Adam Cowher and Charles Cartwright. After the jury was sworn, it was shown that on the 26th November 1841, the death of William Mitchell was suggested, and John Mitchell, his executor, substituted. The plaintiffs then asked leave to substitute Anthony Shorb, John Lyon, David Stewart and William Stewart, in the place of John Mitchell, executor of William Mitchell, deceased; but the defendants objected to this on the ground that the title of the parties proposed to be substituted had been acquired since suit brought. The sale by the executors to these parties, it was admitted, was made since suit brought. Whereupon the court refused to substitute, and the plaintiffs excepted.

His Honour, Judge WOODWARD, in his charge to the jury, thus stated the case, and decided the principles of law arising out of it:

[M'Culloch v. Cowher.]

"On the face of the papers in evidence, the legal title at the commencement of this suit was in M'Culloch, Dixon and Mitchell. On the 12th August 1836 they conveyed an undivided fourth part of the land in controversy to Thomas M'Namara, who was already on the record as a plaintiff in this suit, though without title so far, as the papers show. This conveyance left three undivided fourth parts in M'Culloch, Dixon and Mitchell. M'Namara, although upon the record at the commencement of this action, cannot recover: 1. Because he had not title at the commencement of the suit; and 2. Because whenever his interest was acquired in one-fourth, he conveyed it to Shorb and others by his deed of 16th September 1836. Nor can John Mitchell, executor of William Mitchell, deceased, recover in this action, because in virtue of the power given him by the will of William Mitchell, deceased, he conveyed by his deed of 3d May 1837 all William Mitchell's interest to Shorb and others. But until that conveyance he had an interest and a right of action, and would be entitled to a verdict for damages to that date. This conveyance left in M'Culloch and Dixon an undivided moiety of the land in dispute, and it vested in M'Culloch one-half of that fourth which Mitchell had owned; so that in M'Culloch and Dixon, two of the plaintiffs on the record, there are now vested five-eighths. They are the only persons named as plaintiffs who can recover anything in this action; and the first question presented is, how much, if anything, are they entitled to recover? They have shown title in themselves to five-eighths, but, in our opinion, they will be entitled to your verdict for no more than four-eighths; for they must recover, if at all, according to the interest they had at the time they brought their suit, and which they have not conveyed away. A plaintiff in ejectment cannot recover on a title acquired subsequent to suit brought. For that fractional interest acquired by M'Culloch since he sued, he may have a distinct action, but cannot obtain a verdict in this suit. It stands on the same footing that it would if he had purchased of a stranger instead of a co-plaintiff. It is to him a subsequent cause of action to the suit pending, and he must avail himself of it by a subsequent action. M'Culloch and Dixon, then, are seeking to recover four-eighths, or an undivided moiety of the land, and it is material to observe that they claim under Thomas M'Namara. It is true, the deed of Levis and the Gratzes was made directly to them and Mitchell, but it was so made in virtue of the articles of agreement between them and M'Namara, of April 11th 1832, which were the source of their title. Claiming under M'Namara, they have shown a perfect paper title to one half of the land surveyed to Andrew Pettit.

But here it is alleged, on the part of the defence, that an improvement on this tract was commenced in 1803, or thereabouts, by one Cyrus Cartwright, of whom the defendant, Andrew Cowher, purchased and went into possession in 1817 or '18; that he

[M'Culloch v. Cowher.]

continued to extend his improvements and to claim 300 acres, until about 1828, when M'Namara and Lloyd were about to purchase a large body of lands of the Gratzes, including this tract, and that in order to prevent the defendant's interfering with the contemplated purchase of the Gratzes, M'Namara agreed by parol with the defendant, that they would purchase the Gratz title to this tract and then convey to him one half of it, so as to include his improvements; and he alleges that he was prevented from purchasing the legal title by this agreement, and that he is entitled to hold against the defendants, who claim under M'Namara, 167 acres 23 perches, the half of Andrew Pettit. Is such an agreement proved, and what were its terms, and what its consideration?

But the plaintiffs object to this agreement, if you find it in the evidence, 1. That it is not so specific as to be applicable to the land now claimed by the defendant. The testimony of James Cowher seems to ascertain the defendant's claim with reasonable certainty. He says he knew the lines between Cowher's claim and the adjoining owners, between 18 and 20 years ago, and that they are correctly described on the draft, which is in evidence. That half of the land thus claimed, in which his improvements are, is the subject-matter of this agreement or defence.

2. The plaintiffs next object that the alleged agreement was without consideration, and is void. It is true that Adam Cowher went on there without title, and as to the Gratzes he was a trespasser; but as to all the rest of the world he had rights. He had been there several years, and had made considerable improvements, and if M'Namara, anxious to avoid his competition as a purchaser, as well as his resistance for the whole tract, agreed to convey to him this half of the tract, on his withholding such competition and resistance, his agreement has a sufficient consideration to support it, and he, or others claiming under him, cannot escape from it on this ground.

3. The plaintiffs further object that they are innocent purchasers for a valuable consideration, without notice of Cowher's rights, and therefore they are not affected by the alleged agreement. They purchased only an equitable interest from M'Namara, and Cowher's possession was notice to them of his rights. The possession of land is notice to the world of every title under which the occupant claims it, unless he has put a title on record inconsistent with his possession. If such a title is in the proper records, his possession is referred to that title; but where, as in this case, an individual is in possession under no recorded title, his possession is notice of every title which he can set up to protect himself, sufficient at least to put a purchaser on inquiry. And if the plaintiffs, seeing him on the ground when they purchased, neglected to inquire of him by what right he was there, they cannot now complain that they are purchasers without notice. There is nothing in this objection to the agreement.

4. But finally, the plaintiffs object that this agreement, if proved, is within the statute of frauds and perjuries, which enacts " that no estate or interest, either of freehold or for a term of years, of or in any messuage or lands, &c., shall be assigned, granted or surrendered, unless by deed or will, or writing signed by the parties or their agents, &c." If this be a case merely of a parol contract violated, it is within the statute, for there was no possession taken or other act done under and in pursuance of it, which would exempt it from the operations of that ancient and salutary statute. But the defendants allege that the transactions between M'Namara and Cowher were such as to raise a trust in law which would not be within the statute of frauds and perjuries. " In all cases of fraud, and where transactions have been carried on *malâ fide*, there is a resulting trust by operation of law; but unless there be something in the transaction more than is implied from the violation of a parol agreement, equity will not decree the purchaser to be a trustee. And this distinction is indispensable, otherwise there would be a repeal of the statute, under the pretence of preventing fraud by decreeing an express trust, which would be introductive of the very evils the statute was designed to prevent."

Now if, from the evidence before you, you believe that the transactions between M'Namara and Cowher were carried on *malâ fide*; that is, if M'Namara, professing a willingness and promising to convey half of the 300 acres to Cowher, intended at the same time to get the tract on better terms than Cowher would allow him to do without such promise, with a view of turning Cowher off and appropriating all to himself, it would be a fraud on Cowher to allow such a trick and artifice to prevail; and precisely because it would inflict a gross fraud on Cowher, a trust in M'Namara is implied, and equity would decree that he should convey to Cowher according to the terms of the parol contract. But what is the evidence that M'Namara was thus fraudulent? It has not been shown that Cowher was in treaty with the Gratzes for the land, nor that he was about to commence a negotiation. Is there anything here to satisfy you that M'Namara was guilty of any more fraud or unfairness than are always imputed to a man who refuses to perform his contracts and promises? If there is not, no trust is implied, and the case is within the statute, and the plaintiffs should recover. All the evidence in the case is submitted to the jury, with the question whether this is a case of ordinary contract not performed on the part of M'Namara, or whether he procured Cowher to enter into it by the false pretence of his willingness to give him half the land, and thus gained an advantage to himself in the purchase, which otherwise he could not have had, and deprived Cowher of advantages which otherwise he would have enjoyed. If you find it to be of the former character, you should give effect to the statute, and find for the plaintiffs. If

[M'Culloch v. Cowher.]

you find the transactions to have been substantially of the latter character, you should find for the defendants.

In passing upon the evidence, the jury will bear in mind that the plaintiffs are only to be affected by M'Namara's declarations before he assigned his articles and his interest to the plaintiffs, unless you find that he all along had an actual interest in the land. He sold to plaintiffs on the 11th April 1832, and re-purchased a fourth on the 12th August 1836, and sold again September 16th 1836. His declarations after his interest in the land was devested are not evidence against the plaintiffs; and if any such are in proof, they must be excluded by the jury in passing on the case. I conclude with the language of Justice ROGERS in *Haines* v. *O'Conner*, (10 *Watts* 320), which contains a caution peculiarly appropriate to this case. " We must be careful to avoid unsettling titles to real estate, upon parol proof of bargains made a long time since, particularly where the property has greatly increased in value, or where it has passed into other hands. If the court should yield to such claims, it is impossible to foresee where the mischief will end, from the ease with which such testimony can be procured, tempted as they will be by the chances of recovering large estates on proof of such agreements. If a parol contract for the conveyance of land has been violated, the party has his remedy by action, when he will recover the damages he has *actually* sustained."

Both parties excepted to this opinion.

*Hale* and *Blanchard*, for plaintiff in error. The Act of Assembly on the subject of the parties to an action of ejectment, makes a provision by which the parties may recover according to their respective rights, and, unlike other actions, some may recover and some fail. No evil consequence can result from permitting a plaintiff in ejectment to convey his right, and, at the same time, the remedy which he has instituted to recover it. The statute of frauds is clearly a bar to the defendants' title. They made no pretence that they had any title when they took possession of the land; they were mere trespassers, and therefore had a fraudulent possession, which could form no consideration for a conveyance to them; nor could it raise any implication of a trust out of the alleged parol contract. 9 *Watts* 34; 5 *Watts* 391; 2 *Watts & Serg.* 428; 1 *Watts* 392; 6 *Watts* 464; 3 *Watts* 37, 253; 1 *Watts & Serg.* 377; 4 *Watts* 149; 4 *Watts & Serg.* 92; 2 *Watts* 323.

*M'Allister* and *Burnside*, contra. The rights of the parties must be settled as of the time when an action was brought; and if a plaintiff part with his title while it is pending, he has no longer a right to claim a judgment for himself or for another. The defendants having the actual possession of the land, claiming right, had that kind of title which the law recognises for many purposes, and the purchase from the Gratzes was made by M'Namara as well

[M'Culloch v. Cowher.]

for himself as for the defendant; he was an agent in the purchase, and equity would compel him to convey to the defendant. There is a resulting trust which is not affected by the statute of frauds. 2 *Serg. & Rawle* 461; 1 *Rawle* 408; 10 *Watts* 319; 5 *Watts* 389: 7 *Watts* 276; 1 *Wheat.* 318; 20 *Law Lib.* 253; 16 *Vez.* 250; 17 *Vez.* 432; 14 *Serg. & Rawle* 355.

PER CURIAM.—The law of the case is so well stated by the Judge who tried the cause, as to render any further examination of its principles unnecessary.

Judgment affirmed.