## Beegle *versus* Wentz.

1. A debtor gave a note in which he waived the $300 exemption; his land being levied on he claimed the exemption, and the plaintiff made a new arrangement by parol with him, agreeing if he would abandon his claim he might retain part of his land. *Held*, that this arrangement was binding on the plaintiff.

2. The agreement was not to acquire a new interest by parol; the defendant had both a legal and equitable title and a right to retain so much of the land as would be worth $300.

3. The agreement was that the plaintiff was to take the sheriff's deed for the whole and make the defendant a deed for the part agreed upon. *Held*, that the plaintiff was trustee for that part.

4. If the defendant was induced to surrender his right on the false assurance that the part should be left to him, the plaintiff refusing was a trustee *ex maleficio*.

5. It made no difference that the plaintiff obtained his title through a judicial sale. Where a trust arises in fraud it vitiates all deeds, public and private.

6. The part to be retained was the house and 15 acres; it is to be presumed that it was meant to be laid off in a reasonable shape, and the parties could afterwards do it; if one will not do it the other can on notice to him.

May 20th 1867. Before WOODWARD, C. J., THOMPSON and AGNEW, JJ. STRONG and READ, JJ., absent.

Error to the Court of Common Pleas of *Bedford county*.

In the court below an action of ejectment was commenced September 1st 1864 by F. D. Beegle against Daniel Wentz and another for the recovery of 15 acres of land. The defendants, with their plea, filed an abstract of their title and a draft. Wentz was the owner of 58 acres of land, and on the 10th of April 1858 he executed a single bill to F. D. Beegle for $67.38, containing a waiver of the exemption laws. Beegle recovered judgment on this bill on the 6th of May 1858, on which he issued a fi. fa. to May Term 1859, and the tract of 58 acres was levied upon. About the time the levy was made, Wentz claimed the benefit of the exemption laws, and this endorsement was made on the writ:—

"April 28th 1859. Having demanded of the sheriff the benefit of the $300, this is to certify that for a valuable consideration given us by the plaintiff in this writ we have waived any and all benefit under said $300.

"Attest, J. W. LINGENFELTER.

"DANIEL WENTZ,<br>"ELIZABETH WENTZ."

A venditioni was issued to the next August Term, which was returned "land sold to F. D. Beegle for $55." On the 1st September 1859 the sheriff acknowledged a deed to Beegle for the whole 58 acres, which included the land in dispute. The defend-

5 P. F. SMITH—24

ants remaining in possession of the 15 acres, this ejectment was brought.

On the trial the defendants proposed to prove that in April 1859, when the sheriff was about to execute the fi. fa. against defendants, the benefit of the $300 exemption law was demanded by the latter; that plaintiff, Beegle, was then present, and after an interview and some controversy between plaintiff and defendants, an arrangement was made between them, by which the claim for the benefit of said law was withdrawn by defendants upon condition that plaintiff would buy the whole property of defendants, and convey to him, Wentz, the 15 acres now in dispute ; to all of which plaintiff, Beegle, assented and agreed." This was objected to by the plaintiff, admitted by the court and an exception taken.

The defendants then gave evidence of the matters mentioned in their offer.

Amongst others, one witness testified :—

" I was at defendants' house at the time Colonel Beegle came in, at the time the appraisers were on the premises ; Mr. Beegle and Mrs. Wentz got talking over the matter ; Mrs. Wentz said she would not give up her home, that she must have a home to raise her children ; Beegle told Wentz he did not want to take their home from them, that he would give them a home, 15 acres, provided he would sign some agreement to let him sell the whole tract ; the home was to be 15 acres ; Mr. Wentz then asked how it would be if some other person would buy the land ; Beegle said he would buy the land and give him a sheriff's deed for the 15 acres."

Other witnesses testified to the same effect. The value of the whole tract, according to the evidence, was about $300.

The defendants further offered to prove that " the draft filed in this case represents the land in a reasonable shape around the house in which the defendant resides," which was objected to by the plaintiff, but allowed by the court and an exception taken.

The witness who made the survey and draft testified : " It designates the land in a reasonable shape around the house of the defendant."

The plaintiff's points were :—

1. By the sheriff's sale and deed, all the title of the defendants in the land in dispute passed to plaintiff.

2. There is no evidence in this case to establish a resulting trust in the 15 acres claimed by defendants.

3. As the defendants claim to hold the 15 acres, under a parol agreement, it comes within the Statute of Frauds, and the defendants' claim is the more conclusively barred, because Beegle at that time had no title to the land.

[Beegle *v.* Wentz.]

4. This trust-agreement, if proved, cannot be enforced, more than five years having elapsed since it was made.

5. It is the imperative duty of the party claiming the title to land to be able to fix the boundaries with such reasonable certainty that he may be put into possession thereof by the sheriff, or, if in possession, that he may be maintained in such possession ; and as the pretended agreement did not fix any boundaries, the plaintiff must have the verdict.

6. As the obligation upon which the judgment was entered and the other proceedings were had, contained a waiver of the $300 exemption law, the plaintiff had the legal right to levy and sell the land of defendants, and as the subsequent waiver was without consideration, it was a nullity, and the pretended parol agreement was void.

7. If the plaintiff assented to the second waiver in ignorance of his rights, he is in no way affected thereby, and the consideration of the original waiver, cannot be inquired into in this case.

The court (King, P. J.) charged :—

" The questions of law arising upon this state of facts, if you find them to exist as contended for by the defendant, are,

" 1st. Whether this agreement between the parties—the waiver of the benefit of the exemption laws and the purchase of the land by the plaintiff in pursuance thereof—created a trust in favor of defendant, and constituted the plaintiff a trustee of the defendant to the extent of 15 acres of the land so purchased at the sheriff's sale ?

" 2d. Whether the trust, if so created, is within the Act of 22d April 1856, requiring that ' declarations and creations of trusts of lands shall be manifested by writing signed by the party holding the title thereof, or else be void ?'

" 1st. If there was nothing more than a naked agreement on the part of the plaintiff to purchase the land, or a part of it, for the use of the defendant, it could not be enforced. This is well settled in Kellum *v.* Smith, 9 Casey 164. But is there nothing more than the mere violation of a parol agreement in this case ? If the defendant had advanced the money for the payment of these 15 acres, all the authorities show there would have been a resulting trust which a court of chancery would not refuse to enforce. Is there more equity in advancing the money to pay for the land than in abandoning a claim that would not only have taken the 15 acres in controversy, but might have taken the entire tract ? The plaintiff, however, insists that the defendant cannot set up this equity, as he had relinquished it in the note on which the judgment was entered. [For aught that appears on the trial, there may have been substantial reasons for treating the original waiver of the exemption laws as nugatory. It is certain the plaintiff was unwilling to trust to it, and was well enough satisfied

to take another waiver, at the time the appraisement was demanded, and we think that he cannot now be permitted to allege that the first one was all-sufficient for his purposes. That the first waiver was without consideration, the jury may infer from the conduct of the plaintiff in taking another, and also from the evidence that the consideration of the judgment-note was a store account, which may explain the willingness of the plaintiff to accept the second waiver.]

" A trust may be created in another way. If the jury should find, as the defendant alleges, that the promise of the plaintiff to convey the 15 acres was made for the purpose of entrapping the defendant into signing the agreement to waive the benefit of the exemption laws, and without any intention of complying with such promise, such conduct would amount to a fraud, and constitute the plaintiff what the law calls a trustee *ex maleficio*. The defendant had demanded an appraisement, and had the appraisers on the premises; the plaintiff went into the house to see the defendant, and after considerable conversation between them, Mr. Lingenfelter is called in to write the waiver, and no appraisement is held. If you conclude that the promise of the plaintiff to purchase the land and convey to the defendant the 15 acres in dispute was the consideration of this waiver, and that the plaintiff made this promise with the intent not to perform it, the law will justify you in saying he is a trustee *ex maleficio*, and your verdict should be for the defendant.

[" It is objected that you cannot find a verdict for the defendant because he has not shown to you that the boundaries of this claim were fixed by the parties at the time of the agreement between them. We are not at all sure that the difficulty here suggested does not stand quite as much in the way of the plaintiff's recovery as of the defendant. A plaintiff in ejectment must show the boundaries of his claim as well as his title. In this case the defendant claims 15 acres, including his house, and exhibits a survey which it is proved is in a reasonable shape. It is as much the fault of the plaintiff as of the defendant that the boundaries were not established when the agreement was made; and, as they have been fixed, it is for you to say whether this survey is in a reasonable shape. If it is in such shape, there is nothing in this objection to prevent a verdict for the defendant."]

The judge replied to the plaintiff's points as follows:—

" 1. As an abstract proposition, this may be true enough, unless the jury believe the plaintiff promised, for the consideration alleged, to convey the 15 acres to the defendant, or that he acted fraudulently in obtaining the waiver of the exemption laws.

" 7. We think we have fully met this proposition in what we have said to the jury on the subject of the waiver. The plaintiff cannot avoid his agreement, except by ignorance of facts that

[Beegle v. Wentz.]

he was bound to · know; ignorance of the law will not excuse him."

He denied the 4th and 6th points, and referred to the general charge for answers to the others.

The verdict was· for the defendants. The plaintiff brought the case into the Supreme Court by writ of error, and assigned for error the parts of the charge in brackets, the answers to his points and the admission of the evidence objected to.

*Spang & Kimmel*, for plaintiff in error, cited Kline's Appeal, 3 Wright 46; Barnet v. Dougherty, 8 Casey 372; Kellum v.· Smith, 9 Id. 164; 1 Eden 517; Act of April 22d 1856, § 6, Purd. 654, pl. 13, Pamph. L. 532.

*J. Cessna*, for defendant in error, cited Act of April 22d 1856, *supra*; Clarke v. Trundle, 2 P. F. Smith 492; Mitchell v. Coates, 11 Wright 202; Firmstone v. Mack, 13 Id. 387; Kellum v. Smith, 9 Casey 165; Gilbert v. Hoffman, 2 Watts 66; McKennan v. Pry, 6 Id. 137; Sheriff v. Neal, Id. 540; Hoffman v. Strohecker, 7 Id. 89; Smull v. Jones, 1 W. & S. 128; Foulk v. McFarlan, Id. 297; McCulloch v. Cowher, 5 Id. 537; Miller v. Pearce, 6 Id. 97; Jackson v. Summerville, 1 Harris 376; Shields v. Miltenberger, 2 Id. 79; Morey v. Herrick, 6 Id. 128; Martin v. Gernandt, 7 Id. 129; Lynch v. Cox, 11 Id. 265; Plumer v. Reed, 2 Wright 46.

The opinion of the court was delivered, November 21st 1867, by

AGNEW, J.—We must throw out of the case the waiver of the exemption laws contained in the note on which the judgment was entered. After the execution had issued, Wentz demanded the $300 provision, and the sheriff summoned appraisers, who were on the ground, ready to proceed. If Beegle considered the waiver contained in the note sufficient for his purpose he had nothing to do but to object to the appraisement, indemnify the sheriff, and proceed with the execution; or if the sheriff held the appraisement to apply to the court to set it aside. This he did not;—but entered into a new arrangement with Wentz by which he procured from him and his wife a waiver of the exemption, endorsed upon the writ, for a valuable consideration. This consideration is proved to be the agreement of Beegle not to take from Wentz and wife their house; but to leave it, with 15 acres, as a home to them; and that, if they would waive the exemption, he would buy in the whole tract at sheriff's sale, and make them a deed for the 15 acres. According to the proof the whole tract, containing 58 acres, was not worth more than $300.

The distinguishing feature of the case is, that the agreement of Wentz was not to acquire a new interest in the land by parol;

but he was the owner of the land ; had a title both legal and equitable ; and a right to retain so much of the land as would be of the value of $300. It was this subsisting title which Beegle procured Wentz to forego, by his promise to leave him his house and 15 acres, and make over to him the sheriff's deed for that part. This part he was not to take but to hold in trust. His language was, he did not want to take their home from them ; that he would give them a home of 15 acres, provided Wentz would sign some agreement to let him sell the whole tract ; and he would buy the land and give them a sheriff's deed for the 15 acres.

It presents, therefore, the case of a resulting trust, and falls within the principle of Sheriff *v.* Neal, 6 Watts 534 ; McCullough *v.* Cowher, 5 W. & S. 427 ; Miller *v.* Pearce, 6 Id. 97 ; Morey *v.* Herrick, 6 Harris 123 ; and Plumer & Crarey *v.* Reed, 9 Wright 46.  In the last case the opinion was delivered by the present Chief Justice, and the facts run upon all fours with the present case. There the defendant was in possession, and made a small improvement upon 116 acres of land under a purchase by articles on which he paid only $5. In order to enable the plaintiffs to purchase a large tract of land of his vendor, including the part he had bought, he agreed to cancel his contract on the promise of the plaintiffs to give him a deed for the 10 acres on which his improvement lay ; and it was held in this court that a trust arose out of their promise as an inducement to him to part with the title he had to enable them to make the purchase of the whole. The trust in such cases arises *ex maleficio*, on the principle that equity will not permit one to deprive another of a title he actually has, by such a promise not intended to be performed. In fact, two equitable principles enter into the transaction ;—first, the ownership of the land which is the equivalent of paying for it, for certainly an actual estate in the land is as good as the money paid for it ; second, the absolute fraud which characterizes the non-fulfilment of the very inducement which led the owner to part with his estate. Thus, in this case, there was both title and possession to the whole tract, and a right to retain so much as would fill the exemption. This right Wentz was induced to surrender on the false assurance, which the jury has found, that his house and 15 acres should be left to him ; and secured by the sheriff's deed. Clearly to this extent there is a resulting trust *ex maleficio* in Beegle for Wentz ; and it is not within the act of 1856, which excepts trusts or confidences arising by implication or construction of law. Nor does it make any difference that the title was acquired by Beegle through a judicial sale. When the trust arises in a fraud it vitiates all deeds private or judicial : Hoffman *v.* Strohecker, 7 Watts 86 ; M'Kennan *v.* Pry, 6 Watts 137 ; Gilbert *v.* Hoffman, 2 Watts 67 ; Small *v.* Jones, 1 W. &

[Beegle v. Wentz.]

S. 138; Jackson v. Summerville, 1 Harris 369; Martin v. Gernandt, 7 Harris 128-9. Under the instruction of the court the jury has found the intention of Beegle to entrap Wentz into the waiver, not intending to comply with his promise.

But it is said the 15 acres were not laid off, and therefore, from the uncertainty, no trust arose. This is not a case of absolute uncertainty; the house being a fixed object, and the 15 acres were to surround it. The meaning of the parties was clear—to preserve to the defendant 15 acres of ground around the house as a home. In such a case the law presumes that it is meant to be laid off in a reasonable shape, and the parties can afterwards do it; or, if one will not, the other can, on notice to him of doing it. Such is the principle decided in Cox v. Blanden, 1 Watts 536; Krider v. Lafferty, 1 Whart. 317; Brotherton v. Livingston, 3 W. & S. 337—in which it was held that a want of designation can be supplied by the election of the grantee. See also Thomas's Coke 452. A survey was made by Wentz, which was in proof, the reasonableness of which was to be judged of by the jury.

Upon the whole, we find no error, and

The judgment of the court below is affirmed.