## Coxe *against* Blanden.

## Same *against* Post.

In ejectment, a third person cannot object to the title of the plaintiff, founded on a conveyance of the legal estate by a trustee, on the ground of its having been an abuse of the trust.

A treasurer's sale for taxes of part of a tract of land, and a conveyance of that part, designating the quantity, but not the locality, is good; and an unrestricted choice of locality to the purchaser, is a necessary incident of the sale, and a consequence of a reasonable interpretation of the statute.

APPEAL from the circuit court of *Susquehanna* county, held by Justice *Rogers.*

These were actions of ejectment by *Charles S. Coxe* against *Jonas Blanden* and others, and against *Isaac Post;* in each of which the same questions arose.

The plaintiff, to maintain the issue on his part, gave in evidence: 28th August 1787, warrant to *Isaac Jones* for four hundred acres of land; 1st November 1787, survey of four hundred and thirty-seven acres and two hundred and seventy-one perches and allowance; 1st December 1788, deed poll, *Isaac Jones* to *Tench Coxe;* 20th March 1801, deed, *Tench Coxe* to *William Tilghman, Abraham Kintzing, Jun. P. S. Duponceau* and *G. Worrell,* in trust for certain purposes. And

then offered, 17th April 1803, deed, *George Worrell* to *P. S. Dupon-ceau;* 9th March 1822, deed, *Abraham Kintzing, Jun.* to *P. S. Du-ponceau;* 1st September 1823, *William Tilghman* to *P. S. Duponceau;* 9th June 1828, deed, *P. S. Duponceau* to *Charles S. Coxe* the plain-tiff. To this evidence the defendant's counsel objected, on the ground that the conveyances by the three trustees to the fourth and by him to the plaintiff, were in violation of the trust. The court overruled the objection, and the defendant excepted. The defendant then, to maintain the issue on his part, gave in evidence an assessment of taxes upon this tract of land, four hundred and thirty-seven acres, in the name of *Isaac Jones,* for the years 1813, 1814 and 1815, and a sale by the treasurer of the county, on the 15th of June 1816, of three hundred and eighteen acres of the tract, to *Isaac Post* the defendant, for a sum sufficient to pay the taxes and costs. The deed conveyed to *Post* the three hundred and eighteen acres, but did not describe any particular part of the tract. From these facts two questions arose.   1. Whether the defendant could take advantage of the vio-lation of the trust, in the conveyances given in evidence, if such violation had occurred? and 2. Whether a sale and conveyance of part of a tract of land by the treasurer, for the payment of taxes, without defining any particular part, vested any title in the purchaser? His honour, Justice *Rogers,* directed the jury to find for the plaintiff, and reserved these questions for discussion and decision by the court in bank.

*Conyngham* and *Williston,* for appellants, on the first point cited : *Powel on Powers* 372 ; *Sugden on Powers* 209, 265 ; 7 *Com. Dig.* 8 ; 4 *Johns. Cha. Rep.* 368; 9 *Serg. & Rawle* 181; 4 *Binn.* 31 ; *Willis on Trustees* 140 ; and on the second point, 1st section of the act of 1815, *Purd. Dig.* 865 ; 2d section of the act of 1804, 13 *Serg. & Rawle* 151.

*Grier* and *Case,* for appellees : *Willis on Trustees* 72, 84, 127, 133 ; 2 *Fonb.* 167 ; 2 *Johns. Rep.* 220 ; *Coxe's Dig.* 272 ; on the second point, 13 *Johns. Rep.* 97, 552 ; 11 *Johns. Rep.* 373 ; 2 *Johns. Cas.* 384; 2 *Johns. Rep.* 248 ; 1 *Cruise* 350.

The opinion of the Court was delivered by

GIBSON, C. J.—The report of the judge presents two points.   1. The sufficiency of the plaintiff's title under the several conveyances of the trustees.   2. The supposed divesture of his title by the trea-surer's sales.   The latter of these was reserved at the circuit in order to bring it without prejudice before the court in bank.

It is to be observed that this ejectment is not employed in the pre-sent instance, as it sometimes is in others, to perform the office of a bill in equity, and that involving no considerations arising out of the trust, it is strictly an action at law.   Such an action may be main-tained here, as it may elsewhere, on a naked legal title ; and the first inquiry therefore is, whether a conveyance of the legal estate,

not ostensibly in execution of the trust, is void at law? No reason or authority has been shown to justify us in declaring it so. So far is the common law from lending any peculiar aid to the execution of a trust of land, or restraining the trustee from abusing it, that it does not acknowledge its existence. Even trustees to support contingent remainders may disappoint the object by a common recovery; and this without other redress than punishment by the chancellor for the abuse of their office. In the familiar instance of a conveyance by a trustee with notice, it never has been doubted that the legal estate actually passes, though the motive were to disincumber it of the trust; and notwithstanding equity puts the fraudulent purchaser in the place of the trustee, it does so but at the instance of the interest attempted to be defrauded, and not of an intruder—the *law* interferes at the instance of no man. It has been suggested, that however the matter may stand where there is a separate administration of law and equity, yet where the legal and the equitable estates are convertible, the law, which looks to the substance as well as the form, should do the office of equity by declaring conveyances in derogation of the trust to be void in the first instance. I need but refer to the case of *Lodge v. Simonton, 2 Penns. Rep.* 439, in order to show, that to confound the legal with the equitable title, would confound our most settled distinctions, and throw our jurisprudence into irreparable disorder. Our books are full of instances, in which the title depended on the distinction; and it is not too much to say, that an attempt to abolish it would shake our system of landed property to its foundation. The substance of the relief to be had against a purchaser with notice, is the same here that it is in England; the difference being in the manner and means by which it is obtained. There he is dealt with as a trustee in the place of him from whom he had the title, and compelled to perform the trust, by the instrumentality of a bill in equity; here the same effect, in substance, is produced by compelling him to surrender the possession to the beneficial owner, or perhaps by the appointment of a trustee in his stead. But this can be done at the instance of the *cestui que trust*, and not of one who holds in hostility to his title. If an authority for these rudimental principles were wanting, it might be had in *Bayard v. Colfax, Coxe's Dig.* 272, in which it was ruled by the circuit court of the United States for the district of New Jersey, that a third person cannot object to the title of a plaintiff founded on a conveyance of the legal estate by a trustee, on the ground of its having been an abuse of the trust; and that even the *cestui que trust* can be relieved but in equity. Nothing, it seems to me, is more reasonable than this; for it would be absurd to listen to the complaint of an intruder, in behalf of one who does not think fit to complain for himself, and one whose interest it is not to complain; for the recourse of the *cestui que trust* would undoubtedly be less difficult against the holder of the legal title, than against one who holds adversely not only to the equitable title, but the legal

[Coxe v. Blanden.　Coxe v. Post.]

title also.. But the very point was decided by this court, in *Hunt* v. *Crawford*, 3 *Penns. Rep.* 426. The plaintiff therefore must recover, unless his title has been divested by the treasurer's sales.

The objection to the treasurer's deeds is, that they define the quantity, but not the part sold. Such an uncertainty in the grant of an individual, is remediable at the common law, by the election of the grantee; but not in the case of the king, against whom there is no election; and his grant is therefore said to be void for the uncertainty. Our county treasurers, though agents of the public, are not invested with this prerogative, which, relating as it does to the person of the king, and not to his government, is inapplicable to the sovereignty of a republic; and at all events, the right of election, if permissible on other grounds, in a case like this, is to be exercised adversely to the right of the debtor and not of the public. A distinction, however, is attempted on another ground, and not without a respectable show of authority. In delivering the opinion of the court in *Jackson* v. *Delancy*, 11 *Johns.* 373, Mr Justice *Yeates* remarked, that though a general description in a mortgage, is open to no objection, because a party conusant of his rights may sell as he pleases; yet that an officer must define what he sells. The point before us was touched but incidentally, and in a way too which is not in unison with our own decisions. In *Heyskill* v. *Given,* 6 *Serg. & Rawle* 369, the levy of " a tract of land in the name of *Mordecai M'Kinney*, containing three hundred acres more or less," was held certain enough, as the subject was susceptible of ascertainment, by recourse to extrinsic circumstances; and in *Swartz* v. *Moore*, 5 *Serg. & Rawle* 257, it was determined that if a levy and sale are not by fixed boundaries, or of an ascertained quantity, but of a certain number of acres, more or less, in the tenure of A B, the vendee holds to the extent of such preceding tenure. I am aware that this is foreign to the question of election; but the decisions in New York are as far from touching it as are our own. In the same case of *Delancy* v. *Jackson*, as it appeared on a writ of error in 13 *Johns.* 551, the chancellor certainly did not put his objection to the deed on the impossibility of ascertaining the subject of it, but on the supposed detriment to the debtor, from a description so loose as to leave the value of the property altogether uncertain, in the estimate of the bidders; and in *Jackson* v. *Rosevelt*, 13 *Johns.* 97, Mr Justice *Yeates* put the opinion of the court on the same foundation. These cases were determined on principles of policy and convenience; and how far that might distinguish them from a decision on the construction to be made of a statutory power, would be a matter of inquiry were they of binding authority on this court. Except *Erwin* v. *Helen*, 13 *Serg. & Rawle* 155, to be noticed presently, the only case that seems to come entirely up to the point, is *Haven* v. *Cram*, 1 *Adams's N. H. Rep.* 93, where a constable's deed, in which land sold for taxes was described as " a certain tract of land, part of No. 300, containing two hundred and fifty acres," was held void for uncertainty. We know not what are

.the statutory provisions of New Hampshire, but it seems to me an unanswerable argument in favour of reduction to certainty by election, arises from the provisions of our own.   By the act of 1804, the treasurer is directed " to make public sale of the whole *or any part* of such tracts of unseated land as he may find necessary for the payment of the taxes due thereon respectively."   Granting, then, that, by the principles of the common law, none but the absolute owner of the land may sell on terms that give the purchaser an election, and that an officer is bound to sell a parcel in the way most advantageous to him, by preventing the purchaser from taking his quantity so as to spoil the residue ; yet if the object of a statute which directs the sale can be accomplished but by relaxing the common law in this particular, an authority to do so is as much a part of the statute as if it were given in terms.   Were it otherwise the statute would be controlled by the common law.   What, then, was the object here, and what the means of its accomplishment ?   The authority to sell a part was evidently designed to protect the owner from an unnecessary sacrifice of his property ; and in the construction of it, respect is to be had to the state and condition of the subject of it, at the time of the enactment ; for these must be taken to have been within the contemplation of the legislature.   If the provision for the benefit of the owner, can not be executed consistently with the technical principles of a grant, without frustrating the object of it, by reason of the actual circumstances ; those principles must give way, for the reason that the common law must give way when a statute can not be executed without it.   In 1804, then, when the statute was enacted, these unseated lands were literally in the wilderness.   Nine years afterwards, when I became acquainted with the northern part of the state, where the principal part of them are situated, entire districts were yet unsettled ; and instead of defining a part of any particular tract with certainty, it would not have been an easy matter to determine the township in which it lay.   It was found to be impracticable to assess them separately, according to the actual value of the tract ; in consequence of which, the practice was to rate them all alike, and usually at twenty-five cents the acre, which was about the eighth part of the average value.   To have designated the particular parcels intended to be sold, would have required not only a general survey of the country, but a particular survey of each tract ; which would have doubled the charges and rendered the proceeds, even of the whole, inadequate to payment of the tax ; certainly an unprofitable measure for both parties. But having set apart a particular parcel by survey, there would have been no certainty of its sufficiency to raise the sum required, and the expense of the previous survey would have been a dead loss, the whole being brought to the hammer whenever the bidders understood their interest.   In these circumstances, then, there could have been no designation before the sale ; and to have made it by the terms of the contract in a way to effect the purpose of the legisla-

3 s

ture, was still more difficult. In fact there was but one way in which it could be done at all. A parcel containing a definite number of acres might be cut from a particular side of the survey, by a line to be run conformably to a designated course; but is it to be supposed that the legislature had in view a method which would be obnoxious to the very objections intended to be avoided: for it is evident the bidders would have been left by it as much in the dark as ever, in regard to the actual value; and as to advantage to the owner, no one can doubt that the tract would be as effectually ruined for every purpose of usefulness to either party, as if the purchaser were allowed to take his part at his election. It is not to be supposed that the bidders would enter into a blind bargain for a part, when they might, by holding off, obtain the whole unmutilated by an arbitrary division, without regard to its natural advantages, or the relative situation of springs, watercourses, upland, and meadow. A power to sell a part, necessarily includes a power *to sell in the way most condu-cive to the object*; and if the statute is to have a reasonable construction, it must be taken that a plan of such extreme but fruitless nicety, was not within the contemplation of the legislature. To say that the part sold shall be designated at the sale, by a mathematical line, is to say that the power shall be executed for the potential and not the actual benefit of the owner. In *Erwin* v. *Helen,* already mentioned, a more restricted authority was thought to be vested in the treasurer, who was supposed incompetent to sell on terms which imply an election by the grantee. It is obvious that the question did not directly or even necessarily arise: as the assignment of error had regard to want of descriptiveness in the declaration; and it was not pretended that the purchaser had, in fact, made an election, without which his title would have been imperfect under any determination of the principle. The *obiter* opinion of a judge, though entitled to great respect, can not claim the submission due to an authority; and I am not disposed *to yield more deference to my own dicta than to* those of any other judge. That a position taken but as one of the grounds of a legal inference, is less likely to be secure than the inference is to be correct, will be admitted by all who are familiar with the investigation of principles depending on authority. The powers of the judge are mainly bent on accuracy in the result; and it is more probable that it will be attained there, where the point has been the subject of direct discussion and deliberate consideration, than where it was incidentally involved, and the conclusion promptly drawn, after an argument, in which the subject was but barely touched. It was supposed that the designation of a particular locality would render the grant certain to a common intent, and be an execution of the statutory provision, according to its intent, without the violation of a pre-established rule. Further reflection has led *to an opinion,* that though the greater part of the land may thus be designated with tolerable certainty, yet that as particular parts may be included or left out when the boundaries come to be fixed, the grant must be

uncertain as to these ; and it is impossible to conceive of its going into immediate operation as to a part and not the whole.    The difficulty would still remain to be surmounted by an election, as the grantee would be entitled to have the land laid off, in the way most . beneficial to him in respect to every thing else than its situation in relation to the rest of the tract as a whole ; and little would be gained by discriminating betwixt an election as to locality, and an election as to boundaries.    The defect in the view of the subject taken in that case, was in considering it practicable to execute the statute consistently with the common law principles of a grant, by what was still an imperfect designation, the difference being but in the degree.    As I am of opinion that such an execution would not satisfy the design of the law, I am for allowing the grantee an unrestricted choice, as a necessary incident of the sale and the consequence of a reasonable interpretation of the statute.

But, the vesting of the residue in the purchaser by a subsequent sale, as was done in respect to one of these tracts, would cure the original defect in the conveyance, if any there were, by superseding the necessity of an election or particular designation altogether. This consequence of adding the residue to the part sold, could be evaded but by holding the first deed to be void at the time of its delivery; which would perhaps render the second equally so.    Was it. however so void as to be incapable of confirmation by any act whatever?    A principle which would produce that effect must equally defeat the grant of an individual, as the reduction to certainty by an election subsequently would come too late; such however is not the law, for in the case of an individual, the act of election may be delayed for any period within the lifetime of the grantee, unless perhaps where it is hastened by a request.    "Where nothing passeth," says Lord Coke, "to the feoffee or grantee before election of the one *thing* or the other, there the election ought to be made in the lifetime of the parties, and the heir or executor can not make it.    But where an estate or interest passes *immediately* to the feoffee or donee, the election may be made by themselves, their heirs or executors. Secondly, where one and the same thing passeth to the donee or grantee, and the donee or grantee hath election in what *manner or degree* he will take this, there the interest passeth immediately, and the party, his heirs and executors, may make election when they will."  *Co. Litt.* 145 *a*.    In other words, where the election is not between things but modes of enjoyment, the interest passes presently, and the mode may be determined by the representatives of the donee ; but where it is between things, as it was in the case before us, the interest does not pass presently ; and as it can not vest in the donee after his death, an election to give it effect must be made in his lifetime.    But may it not vest by any other act which equally fixes the operation of the grant?    In *Heyward's Case*, 2 *Rep.* 36, it is said: "if a man makes a lease for life of two acres, the remainder of one to *J. S.* and of the other to *J. N.*; he who first makes election shall

[Coxe v. Blanden.   Coxe v. Post.]

enjoy the one acre, and *thereby* the other acre hath vested in the other." And, evidently, because the act of another has superseded the necessity of an election by him, by removing the original uncertainty without his intervention. The difference betwixt that case and the present consists but in this, that the uncertainty was removable in the former by the grantees or one of them, and in the latter by the grantor; but it is not easy to understand why it should make the grant void *ab initio,* unless it were incapable of being removed in any way. Assuredly it might be removed by a grant of the residue, in the case of the king, against whom there is no election, just as it might be removed, in the case of a subject, by an election actually made; and why it may not by the treasurer's grant of the residue, when he has the same power of disposal in a case fairly arising under the statute, I am at a loss to comprehend. An act which removes the original obstacle to an immediate operation of the grant, ought to be equally effectual as an election, come from what quarter it may. Even taking it for granted, then, that the purchaser had no election under the first grant, yet the object of an election being attained in another way, both grants became operative in him; and, this, were it necessary to recur to it, would dispose of his title to the tract in the name of *Israel Pleasants.* But the election actually made by the defendants is effectual to dispose of it as to both; and as it appeared on the evidence, the verdict ought to have been in their favour.

Judgment reversed and a new trial awarded.