[ PHILADELPHIA, FEBRUARY 24TH, 1840. ]

## LEE *against* PARKER.

### IN ERROR.

In ejectment, evidence is not admissible on the part of the defendant, of declarations made by the ancestor of the plaintiffs, that he had parted with the ownership to a third person for a price paid, and that he had surrendered the possession to such vendee; if the defendant shows no privity or connection with such vendee.

ERROR to the District Court for the City and County of Philadelphia.

Sarah Ann Parker and Charles Collins Parker, by their next friend Daniel Parker, brought an action of ejectment against William Lee, to recover possession of two contiguous lots of ground situate between Market and Chesnut and Fourth and Fifth streets from Schuylkill, in the city of Philadelphia.

The cause came on for trial on the 16th of March, 1838, before JONES, J., when the plaintiff's counsel gave in evidence a patent from the Commonwealth of Pennsylvania to Zaccheus Collins in fee, dated the 12th of October, 1786, for certain lots in the city of Philadelphia including the premises; and produced a witness who testified, that Zaccheus Collins, who died on the 12th of June, 1831, had one child, a daughter, who was married to Daniel Parker, and died during the lifetime of her father, leaving two children who were living. This ejectment was brought on the 25th of June, 1836.

The defendant's counsel then produced one Elizabeth Dalzell as a witness, who testified as follows. " I knew Zaccheus Collins perfectly well. I know where this lot is, and have seen it repeatedly. The defendant has now, and has had possession a number of years, of this lot. He had not possession at my father's death. My father

(Lee v. Parker.)

had no acquaintance with Mr. Lee. The first I knew of the defendant, he called on me in Spruce street, a number of years ago. It was long after the late war. The defendant had possession; since then the defendant has had possession of the property. Mr. Collins was alive then. I remember my father making bricks on this lot. I was on it during that time very often. He held it for the purpose of making bricks many years. My father died in 1812."

The defendant then called William Chase, who testified as follows. " The defendant has had possession of these lots, to my knowledge, since 1811, in the spring. There was then an ice-house there belonging to the defendant. It was not new. I knew Zaccheus Collins in 1811. I was at his house in Second street, in this city, then."

The defendant's counsel then asked, " Did you hear Zaccheus Collins say anything of the defendant's having then, or theretofore having had possession of these lots?" The plaintiff's counsel objected; and the judge said, " I will admit this evidence only to show adverse possession in the defendant." The witness proceeded.

" I called with the defendant on Zaccheus Collins in 1811. I afterwards took a memorandum of what passed between them. Mr. Lee said something about his having had these two lots; supposed he had bought these two lots; and Mr. Lee wanted him to give him some writing about it. Zaccheus Collins said, he had sold them long ago, and was paid for them; said he had sold them to Miller, who paid him in bricks. Zaccheus Collins said, he had nothing now to do with them; that he had sold them, and got paid in bricks; and it would be absurd for him to give any paper. This was in 1811; in February, 1811."

The defendant's counsel then required the witness to state the whole of what Collins had said; to which the plaintiff's counsel objected; and the Court said, that as the witness had already answered to the point of possession, he had testified to all that the defendant had a right to ask; but that the adverse party might, if they chose to do so, call for the whole conversation. The defendant's counsel then offered to prove by the same witness, that Zaccheus Collins said he had sold this lot to Alexander Miller, who had paid him for it in bricks; and taken possession and held it, and dug out the clay to make bricks of; and that this was a continuation of the same conversation; which testimony the defendant offered for the purpose of proving a possession by the defendant; and also to show an equitable transfer of the interest to Miller, and that Collins continued out of possession till his death. To which testimony offered for the purpose aforesaid, the plaintiff's counsel objected. Whereupon the Court decided, that the testimony

(Lee *v.* Parker.)

could not be received upon the point of possession, because it did not appear that the defendant claimed under Miller, or took his possession by contract, nor for the other purpose mentioned; because it was an offer to set up an outstanding equitable title: to which decision the defendant by his counsel excepted.

The witness was then further examined by the defendant, and testified as follows: " Since 1811, there has been an enlargement of the ice-house by the defendant on these lots: there was a fence round it then, and ever since the defendant has had possession since 1811." Upon being cross-examined by the plaintiff, the witness testified as follows: " some time after this I was in the defendant's employ. I think part of the ice-house there now, is where the one was that was burned ·down, the lots being nearer to Fourth than Fifth street. I have seen them often. I never measured where they begin, or where the defendant's other lots ended. The reason I know where it is, is ·that the defendant told me then, and that they are the lots where clay has been dug out, and I saw it. I think there was a fence round it in 1811. I made a memorandum very shortly after of what passed between Zaccheus Collins and the defendant, as the defendant got no satisfaction on what he went for. I did not know what might be the result. The defendant was not with me when I wrote it down."

Several witnesses were examined on each side on the subject of possession by the defendant; after which the learned judge charged the jury as follows:

" The plaintiffs claim title to a tract of land, consisting of two contiguous lots, No. 1974 and 1975, situate between Market and Chesnut and between Fourth and Fifth streets from Schuylkill. The plaintiffs claim title by descent from Zaccheus Collins, deceased, who derived title from the commonwealth, by patent dated the 12th of October, 1786. Mr. Collins had but one child, a daughter, who intermarried with Gen. Daniel Parker: she died during the lifetime of her father, leaving only two children, who are the plaintiffs. At the decease, therefore, of Mr. Collins, his title to the lots in question, (if he died seised of them,) descended to the plaintiffs, as his next heirs at law. The plaintiffs' case, therefore, is very simple and very brief; and none of the facts which I have stated are disputed. A plaintiff in ejectment must recover upon the strength of his own title; but the title which these plaintiffs set up is in itself apparently complete and perfect. The only question, therefore, is whether the defendant has shown anything which in point of law is sufficient to defeat it. It is allowed to a defendant in ejectment to defeat the plaintiff by showing, (if he can) an outstanding title in a third person. The effect of such evidence is not that the defendant has the right to retain the possession, but that the plaintiff has no right to recover

(Lee v. Parker.)

it. The possessor of land, though he have no title whatever, cannot be dispossessed by another who has no right. But an outstanding title must be something more than a mere equitable interest, which might avail to protect the possession of the owner of it, if he were in the possession, or enable him to gain the possession, against the legal title. For want of a Court of Chancery, the action of eject-ment has long been used in this state, to enforce equitable interests against the holder of the legal estate. This was necessary to prevent a failure of justice. But it is not necessary to the administration of justice, that the possessor of land by wrong, or without right, should be at liberty to protect his possession, by showing that a third person had an equitable right to the land. *Prima facie* the holder of the legal title, has the right to the possession ; a man who claims against it on the ground of equity, must show it ; the equity may arise from a multitude of circumstances, varying in every case, and almost indefinitely ; depending upon time, place, notice, the silence of the plaintiff, and many other minute facts. It is a thing personal to the person who sets it up, and those who claim under him, and cannot be set up by a stranger. To allow such a defence would compel the Courts to inquire into, and nicely adjust the equities subsisting between the plaintiff and a third person for the benefit of the pos-session of a trespasser or intruder. The Courts do not sit for such a purpose. It is their duty to undertake such investigations where the interests of justice require it ; and if this defendant had set up an equitable title in himself, it would be our duty to inquire into it, and if we found it good, to give him the benefit of it. I have made these remarks, because something has been said by the counsel of an outstanding equitable title. There is no evidence before you, whatever, of any outstanding title, which can in the least degree protect the defendant's possession; nor is there any evidence before you that he has an equitable title vested in himself. The only point of fact in the cause about which you are to inquire is, whether the defendant has been in possession of this land for twenty-one years before this suit was brought, adversely to the plaintiff. This is a question of fact for your inquiry. I am to tell you what an adverse possession is, and you are to say whether the defendant has had such a possession. An adverse possession must be an actual occu-pancy. A wrong-doer can have no constructive possession. The law will not consider anything to be possession, in favour of a wrong-doer—but possession in fact ; because to construe that to be possession, which in point of fact is not so, would be to favour a wrong-doer. An adverse possession must be exclusive of all others. It must be continued ; for if a wrong-doer abandon the possession for a time, though he should afterwards resume it, he cannot tack together the two periods of his occupancy; because during the inter-val the possession and the right of entry would devolve upon the owner of the legal title, and the statute of limitations would begin

(Lee *v.* Parker.)

to run only from the commencement of his last occupancy. He must mark his pretensions and his possession distinctly, so that it may be open and notorious; and his acts will be construed strictly. When land is actually occupied, by being covered with a building, the occupation, so far as the building extends, is certainly actual, open and distinct. But where the whole of a lot of land is not so occupied, then we must look for some other mark by which an actual possession of the residue is shown. Occupation by inclosure of the residue would be actual, but the inclosure must be kept up. I do not mean that if the fence be blown down, or a panel of it stolen, this would destroy the continuance of occupancy; if the fence should be repaired or replaced as soon as it naturally would be by a man being actually on the ground, to whom the fence would be necessary or convenient for his protection, it would be a sufficient continuity of possession by inclosure. The rule is sometimes expressed thus : The possession must be an actual, continued, visible, notorious, distinct and hostile possession. The actual and continual use of land, in the way or for the purposes of a business, would be actual possession. Take the case put by the defendant's counsel, of a livery stable built back from the line, and a large area in front be used for keeping his carriages, grooming his horses, &c.; that would be actual possession. But this case supposes that the extent of the occupation is defined and distinct. The possession must also be hostile, as it is sometimes called, that is, it must be in opposition to the claims of others. For example, a man who possesses land under a claim or pretence of right, holds adversely; it is not necessary that he should really have a right; if he claims to have a right, he holds adversely to the man who really has the right; on the other hand, a man who claims to hold as a tenant of another, or by his license or permission, does not hold adversely to, but under the person whose right he recognises. These observations are sufficient to explain the nature of an adverse possession. I will add a few words upon the nature of this defence. It is a perfectly lawful one, and if the fact be made out, we are as much bound by law to give it effect, as though it were a title by deed. The statute under which this defence is made, is a beneficial one. Statutes of limitations have existed in England from a very early period. That from which our act is copied was made more than two hundred years ago. Our act of limitations is as old almost as the commonwealth. We have no discretion to say, whether we will or will not regard it. If the fact of an adverse possession, such as I have described, has been satisfactorily proven, the plaintiff is not entitled to your verdict. If the fact has not been proven then he is entitled to your verdict. I will now call your attention to the arguments of counsel and the evidence; and I shall begin with the defendant. The defendant relies, 1st, upon the confessions or declarations of Mr. Zaccheus Collins; 2d, upon the non-

payment of taxes by him; 3d, upon the testimony of witnesses directly to the fact of possession. The suit was commenced on the 25th of June, 1836. Twenty-one years computed back from that date would bring it to the 25th of June, 1815. The defendant contends that his possession commenced long before that time, and has been actual, and continued and adverse, from its commencement to the present time. The first witness relied on is William Chase, who says he called with Mr. Lee upon Mr. Collins, in February, 1811, (here the judge referred to the testimony of the witness, and also to the testimony of Elizabeth Dalzell.) The declarations of Mr. Collins in relation to his possession, and the possession of Mr. Lee, are certainly evidence against the plaintiff. If he said he had sold the lot, it is certainly evidence tending to show that any person who was in possession, did not hold under him. If he declared in 1811, that he had not possession, that he had sold the lot; and again in 1818 or 1819, repeated the same thing in substance to Mrs. Dalzell; it would be evidence that goes to show, that during the interval he was not in possession. And if in fact Mr. Lee held possession of the lots during that interval, it would go to show that Mr. Lee did not hold under him. But these declarations were admitted for the single purpose of proving possession; they are no evidence in this cause of anything else; and it is your duty to confine the testimony to that point. Mr. Buchanan's testimony is also relied upon; and also Stephen Borcus, (to which the judge adverted.) Another fact, upon which the defendant relies, is the payment of taxes by him, and the non-payment by Mr. Collins. It is said that the lots were never assessed to Mr. Collins, nor against his heirs until 1836. It is said also that Mr. Lee paid the taxes since 1817. This is a fact which you will take into consideration, and give to it such weight as it deserves. The mere fact that Mr. Lee has paid taxes does not constitute an actual possession; but our Courts have decided that it is a fact proper to be submitted to the jury, as evidence tending to prove an adverse possession. When connected with other testimony it may be entitled to considerable weight, and in some cases more weight than in others, depending upon the nature of the facts with which it is combined."

The defendant's counsel excepted to this charge.

A verdict was given for the plaintiffs, and a writ of error taken by the defendant; and on the return of the record the following errors were assigned.

1. "The judge erred in charging the jury that the children left by Parker's wife were the plaintiffs below; there having been no evidence of this fact.

2. That the plaintiffs below were not barred by the statute of limitations.

3. That there was not sufficient evidence by Lee that Zaccheus Collins had acknowledged that he had parted with all his title to the property in question.

4. And also in charging the jury that the defendant had no defence except that of adverse possession, which he had not made out.

5. And also in charging the jury that adverse possession was a question of law.

6. And that the defendant had given no evidence of there being an outstanding equitable title against the plaintiffs below.

7. And also in refusing to let the defendant make any other defence than that of adverse possession."

Mr. *Brewster,* for the plaintiff in error, (having abandoned the first error,) cited in support of the remaining points the following cases.  *Roe* v. *Ferrars,* (2 *Bos. & Pul.* 545.)    *Covert* v. *Irwin,* (3 *Serg. & Rawle,* 283.)    *Woods* v. *Lane,* (2 *Serg. & Rawle,* 53.) *Pederick* v. *Searle,* (5 *Serg. & Rawle,* 240.)    *M'Coy* v. *Dickinson College,* (5 *Serg. & Rawle,* 254.)    *Hall* v. *Vandegrift,* (3 *Binn.* 374.) *Munshower* v. *Patton,* (10 *Serg. & Rawle,* 334.)    *Kennedy* v. *Spear,* (3 *Watts,* 97.)

Mr. *W. Tilghman,* and Mr. *Tilghman,* for the defendant in error, cited *Willink* v. *Miles,* (1 *Peters's C. C. Rep.* 429.)    *Jackson* v. *Harden,* (4 *Johns. Rep.* 202.)    *Dorrow* v. *Kelly,* (1 *Dall.* 144.)    *Pollard* v. *Shaffer,* (1 *Dall.* 214.)    *Murray* v. *Williamson,* (3 *Binn.* 135.) *Greenleaf* v. *Birth,* (6 *Peters's Rep.* 302.)    *Jackson* v. *Hudson,* (3 *Johns. Rep.* 275.)    *Foster* v. *Joyce,* (3 *Wash. C. C. Rep.* 498.) *Smith* v. *Burtis,* (6 *Johns. Rep.* 217.)    *James* v. *Gordon,* (1 *Wash. C. C. Rep.* 332.)    *Roe* v. *Harvey,* (4 *Burr.* 2484.)    *M'Donald* v. *Campbell,* (2 *Serg. & Rawle,* 473.)

The opinion of the Court was delivered by

GIBSON, C. J.—The judge refused to let the defendant show an outstanding equity derived from the plaintiff's ancestor; and this is the only matter in which the allegations contained in the assignment of errors, are sustained by the record in point of fact.  By this decision the defence was narrowed to the statute of limitations.

The defendant offered to prove by declarations of the ancestor, that he had parted with the ownership for a price paid, and that he had surrendered the possession—facts sufficient to take such a case out of the statute of frauds in favour of the vendee, and susceptible of proof by the admissions of the party, when competent in other respects.  But the principle that a plaintiff in ejectment can recover only by the strength of his own title and not by the weakness of the antagonist one, must be taken with a grain of allowance in regard

to equities betwixt parties who stand in privity to each other. That an equity alien and adverse to the plaintiff's real estate may be thus set up, I have no disposition to deny; but that an equity which may be waived or abandoned, and which is matter of arrangement betwixt the owner of it, and the owner of the legal estate, may be used by one who stands in no privity with the equitable owner, is what I do not admit. In New York an equitable title cannot be used in a Court of law, either for attack or defence; but it has been held by the Supreme Court of that state, in *Jackson v. Todd*, (6 *Johns.* 267,) that the infancy of a grantor cannot be set up by a mere intruder, as a defence to an ejectment by the grantee, because the deed is only voidable; and that as the infant may not choose to avoid it, the intruder shall not. Yet the intruder proposed no more than to show an outstanding title in a third person; and the ground on which he was prevented—that he had no concern with the matter—is equally to be found in the case before us. The evidence would have shown no more than an equity in the heirs of Miller; and it lay with them to enforce it—not with the defendant, who showed neither privity nor connection with them. As their title, resting as it does principally on their own testimony, might be less easily enforced against the plaintiffs, than against the defendant, having successfully asserted it in a Court of record, they are doubtless desirous that the defence may prevail; but he does not claim under them; nor would they perhaps be willing to convey to him. I mean not to say whether they have such an interest as to disqualify them; but they certainly have an interest to create a bias: yet the appearance of Mrs. Dalzell, as a witness for the defendant, does not serve to connect him with her title, or put him in an attitude to insist on her rights. Till a vendor has executed the conveyance, he is a trustee for the vendee; and it is entirely clear that an intruder cannot set up the existence of a trust against an ejectment founded on the legal title. In Pennsylvania, land adversely held, may be sold, subject to a covenant to put the vendee in possession; and it would place the vendor in an awkward position, did his agreement, *ipso facto*, disable him from performing it. A vendee wishing to get rid of his bargain, could always effect his purpose by making common cause with the occupant, though his conduct would be as bad as that of a tenant who surrenders the possession to an adverse claimant. It is not enough to say that such a case might be an exception by reason of its circumstances. When the plaintiff's title is perfect as a legal one, and where there is nothing but an outstanding equity which is necessarily subordinate to it, there is no occasion for a rule to give rise to such an exception. Certainly an intruder could not go into chancery to enforce an equity against the trustee without having a spark of interest in it; and why should he be suffered to do so at law? Though we admit an equitable title to be a legal ground of action and sometimes of

defence, the decisions in our own Court say'he shall not. In *Coxe* v. *Blanden*, (1 *Watts*, 533,) it was said that a Court of law meddles with the relation of trustee and *cestui que trust*, at the instance of no man; and the same thing was predicated in *Bayard* v. *Colfax*, (*Coxe's Digest*, 272,) by the Circuit Court of the United States for the district of New Jersey. But the very point in controversy was settled in *Hunt* v. *Crawford*, (3 *Penn. Rep.* 426;) and it is now to be considered not to be shaken. For the rest, the nature of an adverse possession, was accurately stated, and the defence on the statute of limitation fairly left to the jury on the evidence; so that if there was error at the trial, it was committed by that branch of the tribunal whose conclusions are not subject to our revision.

Judgment affirmed.