# M'Cullough *against* M'Call.

The possession of a settler of land, lying north and west of the Ohio and Allegheny and Conawango creek, cannot be considered the possession of the warrant holder, where the settler by his agreement with the warrant-holder is to have a portion of the land, including his settlement and improvements, for making the settlement so as to entitle the warrant-holder to a patent for land from the commonwealth. Therefore, if the settler, after having completed his settlement and improvement, lay off on the south end of the survey, by a division line, distinctly marked on the ground, a larger quantity than by his agreement he was entitled to, and take possession thereof by clearing, fencing, cultivating and using it, up to such division line, including the woodland, and the warrant holder lies by for twenty-one years, he will be barred by the statute of limitation from claiming a new division of the land.

A settler does not stand in the relation of a tenant to the warrant holder, but of one let in on a treaty of purchase.

WRIT of error to the common pleas of *Butler* county.

Ejectment brought in the court below, by Archibald M'Call against William M'Cullough, John M'Cullough and David M'Cullough, for the recovery of 70 acres of land lying west of the Allegheny river, in Butler county, and part of a survey patented to the plaintiff below, as containing 439 acres and 105 perches, under the provisions of the act of assembly of April 3, 1792; which, among other conditions, required, before a patent should be issued in favour of any one for land situate as aforesaid, that the party applying

therefor should show that he had either made or caused to be made an actual settlement thereon, by having cleared, fenced and cultivated at least 2 acres for every 100 acres contained in his survey, that he had erected a messuage thereon suitable for the habitation of man, and had either resided himself or caused a family to reside thereon for the space of five years next following his first settlement on the same. John Spangler first contracted with M'Call or his agent, for making a settlement on the land described in the patent, for completing of which he was to have from M'Call 150 acres, to be taken from the south end thereof. Spangler, after having commenced the settlement, transferred his agreement with M'Call, and all his right to the land under it, to John M'Cullough, one of the plaintiffs in error, or perhaps their father, who completed the settlement upon the land according to the agreement made in that behalf and the requisition of the act of assembly, which enabled M'Call, sometime before the 30th of November 1808, to obtain his patent for it. But, previously to this date, John M'Cullough, the settler, had bought of Nicholas Day, who was said to be the agent of M'Call, 50 acres of the land in addition and adjoining to the 150, which he was to have for his having settled and improved it; for which 50 acres he gave Day a yoke of oxen; and in order to part and separate his 200 acres thus acquired, from the residue of the survey, a line of division was run by M'Cullough and Day, as it was said, and marked on the ground. And on the 30th November 1808, M'Call, by his attorney, Thomas Collins, Esq., made a deed of conveyance to M'Cullough, intending thereby to convey to him his 200 acres in fee; but through mistake the north, instead of the south end of the survey, was designated and conveyed by the deed to M'Cullough. The south end embraced the settlement and all the improvements made thereon by M'Cullough, which he was to have included in his 150 acres of the survey. This mistake was discovered afterwards by M'Cullough, perhaps as early as 1810, but was never corrected. He, however, continued to reside thereafter on the south end of the survey, and to clear, enclose, cultivate and occupy it according to the division line which had been run and marked. The land on the south side of this line, and adjoining thereto, was cleared, fenced and cultivated by M'Cullough, to the extent of two-thirds of its whole length. From 50 to 60 acres of the 70 in dispute, were thus cleared and improved by him. And in addition thereto, a dwelling-house, constructed of square logs with a shingle roof, and a double barn, constructed of round logs with shingle roof, were erected thereon by him. The evidence of Nicholas Day having been the agent of M'Call, was that of one witness, who, in his deposition, testified that he was so, without saying how he came by the knowledge of the fact. But Day himself, in his deposition, taken on behalf of the plaintiff below, under a commission issued to the state of Ohio for that purpose, swears that he never was the agent of M'Call. In

opposition however to this, a note in writing made by Day, in which he calls himself the agent of *M'Call*, was read in evidence; and the deed of conveyance from M'Call to M'Cullough produced and given in evidence by M'Call himself, calling for the line of division made by Day, and calling also for 200 acres of land, which was intended to embrace the 50 acres sold by Day, with the 150, which M'Cullough was to have for having completed the settlement and improvement required by the act of assembly. Besides all which, a witness also testified, that M'Call, in a conversation relating to an adjoining tract of land, called "Cooper's tract," said he had to agree to what Day did there. According to the testimony of the deputy surveyor, it appears that the patent contains 490 acres instead of 439, as therein mentioned; and that M'Cullough got by the division, in the south end thereof, 270 acres for his portion, instead of 200, leaving in the residue on the north end, 220 acres for M'Call. Mr M'Call, through his agent John Gilmore, Esq., sold the residue of the survey or tract belonging to him to a George Thorn, and in January 1824, made out and executed a deed of conveyance to Thorn, calling for 289 acres, which, if the patent had only contained 439 acres, as M'Call most probably then supposed was the case, would have included, according to its call of quantity, the 50 acres sold by Day to M'Cullough. Thorn, however, before he would agree to accept of the deed, took a surveyor on the ground, in January 1824, to have the land which he had agreed to buy surveyed; and while engaged in making the survey, he said to M'Cullough, who, it seems, was present, that there was something wrong in it; that there was not land enough to fill his deed. M'Cullough replied, "there is nothing wrong; when I got my deed we ran around the whole tract and found there was nothing· but the 400 acres in it, and we split it in the middle; so that I got only 200 acres, and have paid taxes for 200 acres; I got 150 acres by settlement and bought 50 acres." A witness on the part of the plaintiff below, of the name of Gabriel Pontius, testified that, in 1810, M'Cullough told him, that he had got his deed for his land, and that there was a mistake, that he did not know of at the time; but that it should be corrected; that in the survey he was cunning, he began on the north end, and went on and laid off 200 acres, he thought it should be for M'Call, and they made him a deed for the north end, when it should have been for the south end; said, also, if they would not come back in twenty-one years and rectify it, he thought he could keep the south end by the limitation, and the north end by the deed, and could have the whole tract. Thorn also testified, that when he first told M'Cullough that he had bought the north end of the tract of M'Call, M'Cullough said it was all right, and added, "I'll tell you as a friend, if you get your deed from M'Call, we will swap deeds." The witness looking at M'Cullough without making any reply; M'Cullough further said, "my deed does not suit me;" and at the close of his observations, said, "I have no

deed for mine." When M'Cullough first became acquainted with the fact that the survey or patent contained more than 400 acres does not appear. The evidence mentioned in the case, does not show that he knew it before or at the time the division line was run, or when he received his deed from M'Call, excepting that his deed contained a recital of the patent, stating that it was for 439 acres, but if he had read his deed at the time he received it in 1808, he would probably have discovered then that it was for the wrong end of the survey. M'Call resided in Philadelphia, but in 1824 was made acquainted, if not sooner, with the mistake as to the division line; when it is most likely, from the evidence of ·Thorn, that M'Cullough also, for the first time, came to the knowledge of it. M'Call, however, came to the county of Butler, in which the land lies, in 1827, and every succeeding year after that, until 1837, when this action was commenced, for the purpose of looking after his lands in that county, without making any objection to the division line as it had been run and marked on the ground, or to M'Cullough's occupying and improving the land in dispute, and bounded by it as his own.

The counsel for the defendants below, submitted seven propositions to the court below to be answered by them. To the answers given to the fifth, sixth and seventh propositions, exceptions were taken, which form the grounds of the first three errors assigned.

The fifth proposition was, "that, if the jury believed the defendant's witnesses, that a survey and location of the division line were made in 1808, with the consent and by the act of both parties, and that John M'Cullough had since that time claimed to and cleared to that line, the statute of limitations would protect the defendants in the possession of both the clear and woodland." In answer to this, the court below replied, "If there is evidence that the line run, which is called the 'division line,' was with the consent, and by the act of both parties, then it would not require the aid of the statute to protect the defendants in possession of the land in dispute, and the plaintiff would not be entitled to recover. If there is not evidence of this, then the statute of limitations would not begin to run until the plaintiff had a knowledge of the defendants claiming adversely."

The sixth proposition. "That if the jury believe the testimony of Gabriel Pontius, that John M'Cullough said in 1810, that he would hold to the division line by the statute of limitations, it is to be taken as evidence adduced by the plaintiff, that M'Cullough commenced his adverse possession at that time." To this the court answered, "the defendant having gone into possession, as a purchaser from John Spangler, the settler, who was to have 150 acres for making a settlement, his possession was the possession of Archibald M'Call, and until M'Call had a knowledge of the unfair conduct of John M'Cullough, the statute of limitations would not begin to run; if the testimony of Pontius is relied on, the conduct of John

[M'Cullough v. M'Call.]

M'Cullough was fraudulent and dishonourable in an unusal degree."

The seventh proposition, " That tenants in common and settlers, under articles of agreement, by declaring that they hold adversely, and by having surveys and lines marked upon the ground, will be protected in their possession after twenty-one years, although no notice has been given to their co-tenants or persons under whom they have articled." To this the court responded, " The possession of one tenant in common, or of a settler, under articles of agreement, is the possession of his co-tenant, or of the persons with whom the agreement was made, and can never be considered as adverse to his co-tenant, or as adverse to the persons with whom the agreement is made, unless it be attended with such circumstances as are clearly evidence of an adverse holding."

The court below, in their charge to the jury, among other things, said, " There is, and can be no difference in this case, as to the title of the plaintiff to the whole tract; nor is there any question of the defendant's right to 200 acres on the south end. It is the case of a defendant, who is entitled to 200 acres by his settlement and agreement, and who has not yet received a deed for the part that he is entitled to, claiming the right of holding 270 acres and allowance, and setting up the statute of limitations, as a bar to the plaintiff's recovery of the 70 acres that are in dispute. Where a person enters upon land as a settler, under a contract with a person who has the warrant title, or with another who transfers the contract for settling the land to him, made with the person having the warrant title, the person thus entering cannot avail himself of the statute of limitations; it makes no difference how long he has been in possession, the statute will not begin to run, until notice is given, that he is holding adversely. The person under whom he enters has the right of considering him as his settler, and as in under his title, and not adverse to it, until he has notice of it. And in this case, if the testimony of George Thorn is believed, M'Cullough claimed but 200 acres; and from the organization of the county to 1836, was assessed with but 200 acres, although it is manifest from the evidence, that he knew that there was more than that quantity within the lines that he claimed to." " In this case Nicholas Day swears that he was not, nor ever was the agent of M'Call, and a person calling him the agent of M'Call is not the semblance of evidence; the testimony of Dewatt Foringer, calling Nicholas Day the agent of M'Call, is of this description, and is hardly the semblance of evidence to establish the fact. Where a mistake is naturally made in running lines, and the person who is in possession, without having a knowledge of the mistake, goes on and makes valuable improvements, equity will not permit those improvements and the labour of years to be swept away by a recovery; or if the plaintiff acquiesced in the line, and having a knowledge of the improvements being made on the land, at the time, lay by without

making any objection or claim, it would be unequitable and unjust to permit a recovery. But if the mistake was made by the cunning or connivance of the defendant, and he had a knowledge of it, and the plaintiff had not, the plaintiff would be entitled to recover. If the testimony of Pontius is believed; and it is supported and corroborated by the testimony of George Thorn, and also by the deed, then the consent of the defendant exhibits a degree of dishonesty seldom or ever avowed, or exhibited in an action of ejectment. He, by cunning, begins at the northern boundary, has 200 acres run off, with the design of having more in the south end than he was entitled to; and when, in 1810, he tells Pontius that his deed is for the wrong end, he avows the intention of holding the south end, if they would not come back in twenty-one years, by the statute of limitations, and the north end by the deed. If George Thorne is believed, in 1824 he knew that he had no deed for the south end, and proposed to exchange deeds with him, when he got his deed from M'Call. If the defendant knew of the mistake and the plaintiff did not, and the plaintiff had no knowledge of the improvements made or being made by the defendants, then the plaintiff would be entitled to recover, and the defendant would have no reason to complain, his own conduct being dishonest and fraudulent in the extreme."

The 4th, 5th and 6th errors assigned are exceptions to the charge of the court. The 4th, " In charging the jury that the recognition by M'Call of the division line made by Nicholas Day, upon tracts immediately adjoining, and in the same neighbourhood, and declaring that he had to agree to what Nicholas Day had done; and also that the deposition of Dewatt Foringer, did not amount to the semblance of evidence of Nicholas Day's agency."

5th, " That the line marked upon the ground for 29 years, and claimed to by M'Cullough for that time; 45 acres cleared, house and barn built thereon and actually occupied for 21 years, barred plaintiff's recovery; and the court erred in charging the jury that it was no bar."

6th, " In charging the jury, that notice of adverse possession was not necessary between tenants-in-common, and to the plaintiff below in this case, before the statute of limitations would begin to run."

*Purviance*, for the plaintiff in error, cited 7 *Watts* 442; 3 *Watts* 74; 10 *Wend.* 109; 7 *Johns.* 238; 7 *Cowen* 723; 3 *Johns.* 269.

*Gilmore*, for defendant in error, cited *Adams on Eject.* 468; 4 *Yeates* 109; 7 *Serg. & Rawle* 135.

The opinion of the court was delivered by

KENNEDY, J.—The exception to the answer given by the court below to the fifth proposition of the defendant there, which seems to have any foundation to rest on, is the implication contained in

it, that there was no evidence given on the trial tending to prove that the division line, run and marked on the ground, was made by the consent of both parties; and if there was not, then the statute of limitations would not run against the plaintiff below until he had a knowledge of the defendant's claiming the land in dispute adversely. It is not denied that this line is the same that is called for and mentioned as such in the deed of conveyance from M'Call to M'Cullough. If it be the same, then it is clearly evidenced thereby, that it was agreed on and established as such by the consent of both parties. That deed must be regarded as of the same efficacy against Mr M'Call, as if he had executed it in person; and all that was known and assented to by Mr Collins, his attorney, at the time, must be considered as if known and assented to by Mr M'Call himself. But if the line was first run and agreed to between Day and M'Cullough as a division line, the other evidence in the cause, notwithstanding the evidence of Mr Day to the contrary, declaring that he never was the agent of Mr M'Call, goes to prove quite satisfactorily, if not conclusively, that Mr Day acted as such, and that Mr M'Call has recognized his acts, as if he were his agent, and as if they were binding upon himself as such. For instance, the note in writing shows conclusively, that Mr Day held himself out to the world as the agent of Mr M'Call, and that he professed to act as such. And in support and confirmation of this, Mr M'Call admits the right of M'Cullough to the 50 acres sold to him by Day. Then if Mr Day had authority to sell the 50 acres, most clearly he had, as incident thereto, the right to separate the sale, by making a division line for that purpose, from the residue of the survey belonging to Mr M'Call. But this could not be effected without laying off at the same time, if not previously done, the 150 acres to which M'Cullough was also entitled for making the settlement. But more, Mr M'Call afterwards, by his attorney, Mr Collins, in 1808, undertook to make a deed of conveyance to M'Cullough for the 150 acres, and the 50 acres, as one parcel, making in all 200 acres, which, according to the agreements made in this behalf, were to be so conveyed to M'Cullough in fee, that he might hold the same in severalty by metes and bounds. This act also, in law, must be regarded as the act of Mr M'Call himself, as the authority from him to Mr Collins is not denied; he, therefore, must be considered as having a knowledge of the line of division mentioned therein; which is, in short, thereby acknowledged by him to exist. So that from the time the line of division became thus approved and sanctioned by both parties, the possession of M'Cullough, even according to the notion entertained by the court below, became exclusive and limited by it; and as M'Cullough thereafter claimed and occupied all the land thrown off on the south end of the survey by this line, as his own absolutely, his possession of the same also became clearly adverse to the rights of Mr M'Call; and if the latter suffered twenty-one years, as it seems he did, to run around without making his claim in proper form, the

x.—2 G*

statute of limitations would be a bar to it. Besides this, however, it must also be observed, that it was the bounden duty of Mr M'Call, as soon as he procured his patent for the land, which was obtained by him upon the strength of the settlement and improvement made and completed thereon by M'Cullough, to have made a deed of conveyance to M'Cullough for the 200 acres, thereby setting it apart from the residue of his survey, by metes and bounds according to the election of M'Cullough on the south end of the survey; and if M'Cullough claimed too much, by his division, it was then the business of M'Call to see to it, and to have it corrected. Cox *v.* Blanden, 1 *Watts* 533; *Kielw.* 84; 2 *Coke* 36; 3 *Bac. Abr.* 392, *tit. Grant* (H). See also Palmer's case, 5 *Coke* 24; *Cro. Eliz.* 819. It was, therefore, not the business of M'Cullough to be at the trouble and expense of looking after and calling upon M'Call, who resided at the distance of upwards of 300 miles, to get the land divided, and to obtain his deed of conveyance for it. We, therefore, think, that the court below erred in their answer to the fifth proposition of the defendant.

We also think there is error in the answer given by the court to the defendant's sixth proposition, in saying "his (M'Cullough's) possession was the possession of Archibald M'Call, and until M'Call had a knowledge of the unfair conduct of John M'Cullough the statute of limitations would not begin to run." Now it is clear, that M'Cullough did not enter into the possession of the land as a tenant under M'Call, but under a contract for the purchase of 150 acres of the survey in severalty. A purchaser upon being let into possession on a treaty for purchase, does not become the tenant to the latter. Hearne *v.* Tomlin, *Peake's Ca.*, 192; Kintland *v.* Pounsett, 2 *Taunt.* 45; 1 *Sug. on Vend.* 249. The settlement and improvement made by M'Cullough, were not made for the use of M'Call, that he should thereafter enjoy or occupy the same as the owner thereof; but for M'Cullough himself, who was to be the absolute owner thereof, together with the 150 acres, of the survey, upon which the same were to be made. The only advantage which M'Call could claim to derive therefrom, was the right which it gave him, when completed, to demand from the commonwealth a title, in trust, to the 150 acres for the use of M'Cullough, and to the residue of the survey, if not sold or disposed of by him, for his own use. But as long as M'Cullough continued to fulfil his contract by making the settlement and improvement, the possession was exclusively his, and having completed the same, it must ever continue to be his until he shall part with it; so that M'Call could never have any, the least, claim whatever to it. To the extent then of 150 acres, under the contract for the settlement, the possession belonged exclusively and rightfully to M'Cullough; and if he took possession of the land beyond that, he was a trespasser, and might have been treated by M'Call as such; and certainly it cannot be denied, that the statute of limitations will run in favour

[M'Cullough v. M'Call.]

of an intruder, who is permitted by the owner to hold the possession for twenty-one years, and the owner is bound at his peril to know it.

As to the seventh proposition; the answer of the court to this proposition, so far as regards the possession of M'Cullough as a settler, has already been shown to be erroneous, in what has been said of the answer of the court to the sixth proposition, and therefore need not be repeated. And so far as the answer to the seventh proposition, applies to the case of tenants-in-common and their relation to each other, it is wholly unnecessary to notice it: for it has no application whatever to the case of the settler in this instance; nor in any other, where the settler is to have a certain number of acres of the survey in severalty, including his settlement and all the improvements made thereon by him. His possession of the land can never be regarded as the possession of the owner of the warrant, as the possession taken *eo nomine* by one tenant in common, may be considered in law as the possession of his co-tenant. The possession of the settler, in the case before us, was exclusively his own, and he might have maintained trespass even against Mr M'Call himself, as against any other, if he had entered within the 150 acres on the south end of the survey, for the purpose of taking a joint-possession with him.

As to the remaining matters, which have been assigned for error, it is believed that whatever there may be in them that is erroneous, it will be readily perceived and corrected by the application of what has been said and laid down in noticing the previous errors.

Judgment reversed, and a *venire de novo* awarded.