# Brotherton *against* Livingston.

A certificate of proof by a subscribing witness to an agreement concerning lands, or an acknowledgment of it by the party before a magistrate, is enough to dispense with the common law evidence of execution.

The terms of the recording Acts do not restrain their operation to specialties, but embrace all contracts concerning lands, provided they be in writing.

It is not a good objection to the admission in evidence of an agreement for the sale of land, which is the subject matter of the action, that it does not particularly specify its location; especially if the party offering it, propose to follow it by proof of possession taken under it.

In an action of ejectment against four defendants, upon all of whom the writ had been served, and against all of whom some proof had been given, the refusal of the court to direct the jury to find a verdict for two of them, that they might be examined as witnesses for the other two, is not error.

ERROR to the Common Pleas of *Adams* county.

Adam Livingston and John Livingston against John Brotherton, Sr., John Brotherton, Jr., Daniel Bittinger, and —— Lutz. Ejectment for 350 acres of land in Franklin township, Adams county.

The plaintiff gave in evidence, a warrant for 400 acres to John Sample, of the 24th of March 1794; survey, December 1795: 6th of October 1815, deed, John Sample to James Hamilton, recorded 17th of June 1816: 29th of January 1816, deed, James Hamilton to Adam Livingston, recorded 17th of June 1816. It was admitted that the plaintiffs were the heirs at law of Adam Livingston, and that the Brothertons were in possession. The plaintiffs then gave some evidence as to the possession of Bittinger and Lutz.

The defendants, the Brothertons, took defence for 340 acres of the land, describing it particularly, and the other two defendants disclaimed title and possession. The defendants offered in evidence the following agreement of James Hamilton with John Hetick, dated the 2d of February 1814, and recorded the 30th of May 1814, to which John Henkle, now dead, was a subscribing witness, and had made the usual proof of the execution of the instrument before a justice of the peace; and to follow it by proof, that within a year from its date, John Hetick took possession of the quantity of land mentioned, being a part of the tract, and cleared and made improvements on the same.

"Whereas John Hetick, having this day gone my security in a judgment in favour of John Snyder for about $30, or thereabout, now I, James Hamilton, of Adams county, do hereby undertake and bind myself, my heirs and executors, to convey to said John Hetick, his heirs or assigns, 150 acres of my lands, which I hold

in the South Mountain, anywhere on the turnpike road between Newman's and the bridge over the Canadequingt creek, by a good and sufficient title. He, the said John Hetick, to pay me at the rate of $1.50 per acre—the one-third to be paid on the 1st of April next, and the other in two annual payments. The above amount of the judgment to be in part of the first payment; but if the above judgment is payed by James Hamilton any time before the 12th of this month, the above agreement to be void."

The plaintiffs objected to the evidence, on the ground that it was not a deed; that it conveyed no interest in the land, and had not been proved. The court sustained the objections, rejected the evidence, and sealed a bill of exceptions at the instance of the defendants.

The defendants then offered in evidence the following agreement of James Hamilton with Catharine Hetick, dated 3d of February 1814, recorded 30th of May 1814, of which the proof of execution was the same as that of the agreement with John Hetick:

" I, James Hamilton, of Adams county, do hereby bind myself, my heirs, executors, and administrators, and every of them, to convey unto Catharine Hetick, of the borough of Chambersburg, 200 acres of my lands in Adams county, lying and being on the Chambersburg and Gettysburg turnpike, anywhere on said road where she may choose the said 200 acres; for which I bind myself, &c., to give her a good and sufficient deed for, on the 1st of April 1815, she to pay me $150 in five equal annual payments —the first payment to be paid on the 1st of April next; she to retain her present bills out of the first payment. In witness whereof," &c.

The plaintiffs objected to the evidence on the same grounds, and it was rejected, and bill of exception by the defendants.

The defendants here asked the court to direct the jury to render a verdict in favour of Lutz and Bittinger severally, in order that they might be examined as witnesses for the other defendants. This was refused by the court, and exception taken by defendants.

The three bills of exception were assigned for error.

*Reed* and *Dobbin*, for plaintiffs in error. The court below overruled the evidence, on the ground that the agreements were not deeds, and therefore not the subject of the recording Acts. This is giving to those Acts an interpretation which their terms do not warrant. The Acts of the 18th of March 1775, and the 18th of March 1814, embrace all instruments concerning lands, whether they be simple contracts in writing or executed deeds. Although the agreements offered in evidence were not deeds of conveyance, vesting a legal title, yet they vested an estate in the land which might have been enforced in equity ! 1 *Johns. Chan.* 224, 398;

10 *Watts* 387; 9 *Watts* 107; *Act of the* 31*st of March* 1792, as to written agreements of decedents; 5 *Johns. Chan.* 230, 187; 1 *Story's Eq.* 392; 4 *Rawle* 444. But the offer to follow the evidence by proof of actual possession of the land in pursuance of the agreement, removed all doubt of its legality.

*Smiser* and *Stevens,* for defendants in error. Hamilton had no title or possession of the land until 1816; his agreement therefore in February 1814, without notice to Livingston, gave no equity in the land. But if Hamilton had title, what did he agree to sell? The paper offered specified no particular land; and if recorded, afforded no notice of what land would be claimed under it. It was neither a deed or conveyance, and therefore not the subject embraced by the recording Acts. 4 *Kent's Com.* 451; 12 *Johns.* 73; 4 *Johns.* 234.

Again: the contract was executory, and there was no offer to prove that any selection was made, or that the party lived there: this is essential to the validity of an agreement so vague in its terms. 13 *Johns.* 97; 18 *Johns.* 107; 5 *Wheat.* 359; 11 *Wheat.* 78, 90. And if no selection be made before another right intervenes, the right is gone.

The opinion of the Court was delivered by

GIBSON, C. J.—There was no reason for an exception to the refusal of the motion to direct a verdict for Lutz and Bittinger, to have them examined as witnesses for their co-defendants. They were included in the writ, and proved by the return of service to be in possession; so that it cannot be said there was no evidence to affect them. Even had the *primâ facie* evidence of the return been rebutted by counter-proof, the question of possession would still have been for the jury. But as no such proof was attempted, there was no colour to say that these parties, as defendants in possession, did not stand affected by the evidence. Besides, it is far from clear that the measure demanded did not lie in the discretion of the court; and the denial of no other right than a legal one, is a subject of error.

But the refusal to allow the two agreements, signed by Doctor Hamilton, to go before the jury, is not so well founded. These, it is true, are not deeds, but they are nevertheless contracts which may be enforced in equity. The recording Acts certainly embrace more than conveyances executed; for it has never been supposed that articles for the sale of land may not be recorded; yet a simple contract, provided it be in writing, may as readily be enforced by a decree in equity, as if it were a covenant. Nothing is more common in the British courts than decrees for the specific performance of parol contracts witnessed by any memorandum which happens to satisfy the fourth section of their statute of frauds. As an equitable conveyance then, why should not such

[Brotherton v. Livingston.]

a memorandum be recorded? There is nothing in the terms of the recording Acts to restrain their operation to specialties. They describe the documents to be recorded, as deeds, conveyances, or instruments concerning lands; and it cannot be said that these agreements are not instruments because they are not sealed, any more than it can be said that promissory notes, bills of exchange, or underwritten policies of insurance, are not instruments. They fall within the very words of almost all the statutes on the subject; so that there is no room for an objection to them on the first ground stated in the bill of exceptions.

Nor was the objection, that the execution of them had not been proved, founded in fact. The usual certificate of proof by the ,subscribing witness before a magistrate, was annexed to the one; and a certificate of acknowledgment, to the other. Surely that was enough to dispense with the common law evidence of execution.

The remaining ground of exception might have been a plausible one, had there not been an offer to follow the agreements with proof of possession taken under them, or at least one of them. The bargain was not for a particular tract or specific parcel; but as the generality of its terms might be reduced to certainty by the election of the bargainee, it was not void. It was for so many acres of " my land which I hold in the South Mountain, anywhere on the turnpike road between Newman's and the bridge over the Canadequingt creek;" which certainly gave him a right of selection. In one of the agreements such a right is given in terms; but even if that were not so, the result would be the same; for, as was held in *Coxe* v. *Blanden*, (1 *Watts* 536), want of designation may be supplied by the election of the grantee even under a conveyance by a public officer. An agreement such as these, is in principle like an indescriptive warrant, which is attached to the subject of the grant by being surveyed on particular land selected by the warrantee. It is similar also to an incomplete sale of a chattel, which requires something to be done to give it operation and effect, such as naming the price, or settling any other condition of the contract, by the agency of a third person: and the difficulty is to understand how an agreement, which presently vests no title and gives no notice to purchasers, may be recorded so as have an effect in the mean time. It is to be remembered, however, that the object of the recording Acts is not only to give notice, but to perpetuate the writing and the proof of its execution. Had notice been the only object, the common law evidence of execution would not have been dispensed with, as it has, by the Act of 1715, which provides that an exemplification of a recorded deed shall be allowed in all courts to be as good evidence ·as the original. Now the fitness of a writing as a subject for recording, has not been thought to depend on the efficacy of its operation or the completeness of its provisions. It has been thought sufficient

[Brotherton v. Livingston.]

by the Legislature that it be an instrument touching or concerning real estate. There are an unusual number of statutes on the subject, and it would be tedious to recapitulate the expressions in each; but that provision in substance runs through them all, and it clearly embraces the writings before us. Had these been admitted in evidence, the existence of notice would have been a subject for subsequent inquiry; and without proof of possession, to put a purchaser on the scent of the plaintiff's title, their case would not have been made out. But that matter was not connected with the competency of the agreements as evidence, and furnished no reason why they should not go to the jury.

Judgment reversed, and *venire facias de novo* awarded.