# Council Rock School District v. Land in Northampton Township

*Eastburn & Gray,* for plaintiff.

*Cadwallader, Darlington & Clarke,* for Northampton Municipal Authority.

BODLEY, J., October 10, 1968.—In this eminent domain case, Council Rock School District condemned six lots of a subdivision owned by Neshaminy Valley Developers, Inc. and known as College Park. The record owner has not challenged the taking and is not a party to the dispute involved here. However, Northampton, Bucks County, Municipal Authority, alleging that it too is a condemnee, filed preliminary objections to the declaration of taking, raising certain procedural and substantive questions. The matter has been argued before the court en banc and is now before us for disposition.

Our attention is first turned to the question of

whether or not the authority is, in fact, a condemnee, as defined by the Eminent Domain Code of June 22, 1964, P. L. 84, art. I-IX, secs. 101-903, 26 PS §1-101 - 1-903, for if it is not found to be a condemnee, it has no standing giving it right to challenge the proceedings.

Section 201 of the code provides the following definition of the term "condemnee":

" . . . The following words, when used in this act, unless the context clearly indicates otherwise, shall have the meanings ascribed to them in this section:

*        *        *

"(2) 'Condemnee' means the owner of a *property interest taken, injured or destroyed,* but does not include a mortgagee, judgment creditor or other lienholder". (Italics supplied.)

In commenting upon this definition, the Joint State Government Commission noted:

"Mortgagees, judgment creditors and lienholders have been excluded from the definition since, under this act, they do not have such an interest in the property as to be considered condemnees. This is in accord with existing law. It is intended by this definition to include tenants, purchasers under agreements of sale and holders of options as condemnees".

The authority admittedly is not the owner of the land taken nor does it claim to be a tenant, purchaser under agreement of sale or the holder of an option. It bases its claim to condemnee status upon a certain agreement entered into between it and the owner of the land, Neshaminy Valley Developers, Inc., on February 2, 1966 (prior to the taking), under which the authority agreed to supply water to the subdivision when and as required. In consideration of the authority's promise the developer of College Park agreed, inter alia, that all water required by the houses to be built within the subdivision would be purchased from the authority and further agreed to make a certain

capital contribution to the authority to aid in the development of a source of water.

A still further provision in this agreement, and the one upon which the authority depends in support of its claim to condemnee status, provides as follows:

"(3) The Developer further agrees that he shall furnish and deed without cost to the Authority, a ['lot' within the subdivision but not necessarily one of those condemned.]. . . Said piece of ground shall be used by the Authority for the development of the source of water . . . *The location and identity of said lot shall be determined by the parties hereto;* in the event that the parties hereto are unable to determine the identity or location of the said piece of ground, said piece of ground shall be chosen by the Authority's consulting engineer. . . . " (Italics supplied.)

Although the agreement referred to is not a part of this record, we take note that it has been duly recorded in the Bucks County Office for the Recording of Deeds, in deed book 1822, p. 153, etc.; and further note that although the agreement does not refer to the total number of lots involved in the subdivision known as College Park, it does refer to the developer's right to develop in sections containing not less than twenty-five lots. Though it is of little moment, it is thus noted that the six lots, the subject of the eminent domain proceedings, comprise but a portion of the entire subdivision.

Also, although the agreement involved is purely executory, it was the proper subject for recording: Brotherton v. Livingston, 3 W. & S. 334:

" . . . Now the fitness of a writing as a subject for recording, has not been thought to depend on the efficacy of its operation or the completeness of its provisions. It has been thought sufficient by the Legislature that it be an instrument touching or concerning real estate. . . . " id., pp. 337-338.

Accordingly, the agreement, since recorded, affords constructive notice of its contents and, a priori, of all the rights and interests created therein. See, generally, Anno., 26 A.L.R. 1546-1554.

We therefore examine the authority's agreement with the developer to ascertain whether or not the agreement creates rights in the authority relating to the use of the land condemned and whether or not such rights will be directly appropriated by reason of the condemnation. The answer to this question, in turn, governs the inquiry as to whether or not the authority has any "property interest" in the lots condemned by the school district. See Restatement, Property. §565, Comments (a) and (b), pp. 3317-3318 (1944). It is immediately clear that the primary question must be answered in the negative and thus it is necessarily determined that the authority has no property interest and is not a condemnee within the meaning of the Eminent Domain Code.

In condemning the six lots in question, it is obvious that the school district did not acquire the Municipal Authority's right to supply water to the tract of land nor its right to select a lot from the remainder of the tract for the purpose of locating a source of water nor yet the right to payment from the developer as a contribution to the water development project. In short, it acquired no property interest of the authority.

As alluded to heretofore, the status of "condemnee" derives from the concept of a "property interest." See 26 Am. Jur. 2d, Eminent Domain, §173, p. 848 (1966), where the scope of the term "property" is considered:

"Where a parcel of land is taken by eminent domain, the owner of the fee is not necessarily the only person who is entitled to compensation. On the contrary, every person having an estate or interest at law or in equity in the land taken is entitled to share in the award. In other words 'property,' as used in the

Constitution, is a word of most general import and extends to every species of right and interest, capable of being enjoyed as such, upon which it is practicable to place a money value. The term comprehends not only the thing possessed, but also, in strict legal parlance, means the rights of the owner in relation to land or a thing; the right of a person to possess, use, enjoy, and dispose of it, and the corresponding right to exclude others from the use. When, therefore, a physical interference with the land substantially subverts one of these essential rights, such interference 'takes,' pro tanto, the owner's property. . . . *'Property' and 'owner' are regarded as correlative terms, and any person having property rights in the land is one of its owners"*. (Italics supplied.)

Pennsylvania law is in accord: Schuster v. Pennsylvania Turnpike Commission, 395 Pa. 441 (1959) See, generally, 2 Nichols on Eminent Domain, §5.1, pages 4-16 (1963). This same protection is afforded contractual rights where such rights achieve the status of property rights: see 26 Am. Jur. 2d, Eminent Domain, §177, pages 854-856, but there is this limitation:

" . . . However, in pursuance of the general rule that where real property is taken for public use a person other than the owner in fee is not entitled to compensation, or to share in the compensation awarded to the owner, unless he has some 'estate' or 'interest' in the property, *a mere contractual right without such 'estate' or 'interest' is not sufficient"*. id., at page 855. (Italics supplied.)

Inasmuch as the agreement between the authority and the developer provides for certain capital contributions per lot and inasmuch as the taking by the school district reduces the number of lots for eventual development, it may be argued that the authority

thereby loses both capital contribution and ultimate water sales. However, this is not enough to give the authority a property interest in the land taken. As set forth in Omnia Commercial Company, Inc. v. United States, 261 U. S. 502, 510, 67 L. ed. 773, 776 (1923), quoting from the Legal Tender Cases, 12 Wall 457, 20 L. ed. 287, concerning the construction of the Fifth Amendment as it prohibits the taking of private property for public purposes without just compensation or due process of law:

" 'That provision has always been understood as referring only to a direct appropriation, and not to consequential injuries resulting from the exercise of lawful power. It has never been supposed to have any bearing upon or to inhibit laws that indirectly work harm and loss to individuals' ".

The court then distinguished between appropriation and frustration, holding that where the rights and obligations under a contract are not acquired by the condemning body, but rather ended by the condemnation, there is no taking.

"The conclusion to be drawn from these and other cases which might be cited is, that for consequential loss or injury resulting from lawful governmental action, the law affords no remedy. The character of the power exercised is not material. [Citing cases] If, under any power, a contract or other property is *taken* for public use, the government is liable; but if injured or destroyed by lawful action, without a taking, the government is not liable. What was here requisitioned was the future product of the Steel Company, and, since this product in the absence of governmental interference would have been delivered in fulfillment of the contract, the contention seems to be that the contract was so far identified with it that the taking of the former, ipso facto, took the latter. This, however,

is to confound the contract with its subject-matter. The essence of every executory contract is the obligation which the law imposes upon the parties to perform it. 'It [the contract] may be defined to be a transaction between two or more persons, in which each party comes under an obligation to the other, and each reciprocally acquires a right to whatever is promised by the other'. Dartmouth College v. Woodward, 4 Wheat. 629, 656. Plainly, here there was no acquisition of the obligation or the right to enforce it." Id., p. 776.

It would appear to be clear from the foregoing that the authority's contract with the developer and the rights thereunder were not part of the res taken by reason of the condemnation of the lots in question. The executory contract between the authority and the developer, with its inchoate rights and obligations, does not extend to the land condemned, as in the case of an equitable servitude, and, ergo, does not constitute a property interest owned by the Municipal Authority: Cf. Adaman Mutual Water Company v. United States of America, 278 F. 2d 842 (1960); Pape Condemnation, 39 D. & C. 2d 128 (1964). Nor does the agreement give rise to a valid option in the Municipal Authority: West v. Peoples First National Bank & Trust Company, 378 Pa. 275 (1954).

We, therefore, hold that the Municipal Authority is not the owner of a "property interest" within the meaning of section 201 of the code and, therefore, is not a "condemnee." Accordingly, the authority has no standing in these proceedings and we need not consider the substance of the authority's preliminary objections.

ORDER

And now, to wit, this October 10, 1968, the preliminary objections filed by Northampton, Bucks County, Municipal Authority are hereby dismissed. Costs upon the authority.